QUESTION PRESENTED AND CONCLUSIONS
 CAN CSM'S BOARD OF TRUSTEES DELEGATE TO THE FACULTY THE AUTHORITY TO MODIFY FACULTY HANDBOOK PROVISIONS RELATING TO TENURE AND EMPLOYMENT?
No. Provisions contained in the Colorado School of Mines Faculty Handbook cannot be construed to confer upon the faculty or the Faculty Senate final approval of any changes to the handbook and policies relating to the employment relationship between the faculty and the Colorado School of Mines. Such a provision would constitute an impermissible delegation of the powers of the Board of Trustees. The Colorado Constitution and the Colorado General Assembly have vested the power to govern and administer the Colorado School of Mines in the Board of Trustees. The Board has the power to promulgate regulations in accordance with this authority.
The Board can only delegate those powers which are not finally vested in the Board. Delegation of the "final" approval of the handbook, with its provisions on faculty tenure acquisition, tenure revocation, and other employment related matters would be in derogation of the intent of the General Assembly and the Constitution, and therefore impermissible.
FACTUAL BACKGROUND
Faculty Senate members claim that provisions of the Colorado School of Mines Faculty Handbook vest them with the authority to approve or disapprove school regulation or policy changes, and, in the absence of such approval, changes to these regulations or policies are null and void.
The Faculty Handbook contains the following provisions:
 The Faculty Handbook Committee will accept written recommendations from any individual or group for inclusion in a yearly review of the Handbook material by the committee. These written suggestions should be sent to the office of the Vice President for Academic Affairs where they will be forwarded to the committee. Review procedures on the Handbook will occur early in the fall semester each year so that approval by the faculty and Board of Trustees may be completed by the beginning of the second semester of each year.
Colorado School of Mines Faculty Handbook ("Handbook") section 1.1. The Bylaws of the Faculty Senate provide that a standing committee (the Faculty Handbook Committee) will "annually review the CSM Faculty Handbook and . . . respond to the questions or suggestions submitted by individuals or groups within the campus community." Handbook, Appendix III, Faculty Bylaws at A-52. This committee is to review changes and make recommendations to the Faculty Senate for approval, modification or disapproval.Id.[1] Members of the Faculty and the Faculty Senate believe that these provisions mandate that any change of procedure or policy in the Faculty Handbook has no force or effect without the approval of the Faculty Senate pursuant to section 1.1.
ANALYSIS
The Colorado Constitution and the Colorado General Assembly have vested the final authority for control and management of the Colorado School of Mines in the Board of Trustees for the Colorado School of Mines. Section 23-41-104, 9 C.R.S. (1995). The statute provides in pertinent part:
 (1) The board of trustees has the control and management of the Colorado school of mines and of the property belonging thereto, subject to the laws of this state, and may make all needful bylaws and regulations for the government of said board and for the management and government of the Colorado school of mines not inconsistent with the laws of this state
Section 23-41-104(1), 9 C.R.S. (1994); Accord Colo. Const. art. VIII, § 5. By this authority the Board of Trustees is enabled to promulgate bylaws and regulations and in these bylaws and regulations delegate the authority necessary for the administration of the school. Section 23-41-104(1), 9 C.R.S. (1994); Accord Colo. Const. art. VIII, § 5.
Courts have determined that certain powers of the governing board of a state institution of higher education are not delegable. For example, in Hansen v. Colorado School ofMines, 42 Colo. App. 292, 599 P.2d 928 (1979), an action was brought by a teacher at the School of Mines for breach of an employment contract. Hansen was an assistant professor who was nonrenewed by the School of Mines. Hansen had obtained a doctorate and based his breach of contract claims on alleged representations made by his department head and the school's vice-president of academic affairs, to the effect that if he obtained a doctorate he would be promoted to associate professor and thereby gain de facto tenure. The Colorado Court of Appeals disagreed and held that the "general management power of the School of Mines' Trustees under its statute . . . must necessarily include the power to hire faculty and such power cannot be delegated unless expressly otherwise authorized by the legislature." 42 Colo. App. at 293,599 P.2d at 930; see also Van Pelt v. State Boardfor Community Colleges Occupational Education,195 Colo. 316, 323-24, 577 P.2d 765, 771 (Colo. 1978) (duty to hire faculty implicitly included in enabling statute and cannot be delegated without specific legislative provision);University of Colorado v. Silverman,192 Colo. 75, 77, 555 P.2d 1155, 1158 (Colo. 1976) (letter from associate dean does not create employment contract)
The Colorado Court of Appeals most recently reviewed this issue in Ahmadieh v. State Bd. of Agriculture, 767 P.2d 746
(Colo.App. 1987). In Ahmadieh, tenured faculty members of the University of Southern Colorado brought suits seeking to invalidate their terminations. In 1985, U.S.C. underwent sweeping changes to its programs arising out of its conversion from a technical community college to a general baccalaureate and polytechnic institution. The State Board of Agriculture reviewed USC's programs to determine which programs should be enhanced, maintained, reduced or eliminated. It hired a new interim president and asked him to explore means of compliance with the new changes. The president recommended eliminating several courses that in effect eliminated the plaintiffs' jobs. These recommendations were adopted by the Board and the positions were eliminated.
The Plaintiffs in Ahmadieh claimed that the terminations were improper because the U.S.C. handbook contained procedures for changes in curriculum which were not followed by the Board. The handbook mandated that changes in curriculum were to be referred by the Board to the Faculty Senate and university curriculum committee for approval prior to any changes being made. The plaintiffs argued that the handbook provisions were part of their employment contract under Continental Airlinesv. Keenan, 731 P.2d 708 (Colo. 1987). The handbook contained a provision which stated:
 Development — The responsibility for the initial development of new courses, delegation or changes in existing courses, and the initiation of new programs or program modification lies primarily with the faculty of each department. All proposals concerning curriculum shall be reviewed and approved or disapproved by the University Curriculum Committee and the Faculty Senate prior to implementation.
Ahmadieh, supra at 748. It was undisputed that the proposed changes had never been forwarded to the curriculum committee or the Faculty Senate for approval. The question of whether such a referral is or could be required by the handbook was the primary issue in the case.
The Court of Appeals held that such a referral could not be mandated in the handbook. It based its analysis not only on general rules of contract construction, but also on the general proposition that "in construing the handbook, we must presume that the Board intended to follow the mandate of the Colorado General Assembly without abdicating its statutorily conferred powers and duties." Id. at 749. The Court of Appeals found that the Board's "general authority includes the power to design USC's academic program, subject only to limitations imposed and reservations made by the General Assembly."Id. It found:
 where a handbook prepared by a governmental agency can be read to confer exclusive or ultimate authority upon the faculty senate and the curriculum committee to approve or disapprove program changes contrary to the General Assembly's legislative delegation, or alternatively, can be construed in a manner which avoids unlawful delegation, the latter construction should be favored.
Id. The Court of Appeals reasoned that to decide otherwise would be in effect to permit either the Faculty Senate or the curriculum committee a "pocket veto" of any Board imposed change simply by failing or refusing either to approve or disapprove them. Any such construction would be an "improper delegation of the authority vested by the General Assembly in the Board and would render the handbook provisions unlawful and void." Id.
This view of the delegation authority of the Board of Trustees is consistent with the holding of Steinhauer v.Arkins, 18 Colo. App. 49, 69 P. 1075 (1902). InSteinhauer, the plaintiff was an unsuccessful degree candidate at the Colorado School of Mines. At this time, degree candidates were required to pass an examination administered by the faculty prior to receiving their degree. The plaintiff was denied a degree after failing the examination. He sued the Colorado School of Mines Board of Trustees alleging the denial was based, not on his failure to pass the examination, but on faculty malice. The Court of Appeals upheld the District Court's dismissal of plaintiff's action. It concluded that the power to confer degrees rests with the School of Mines as represented by the Board of Trustees. Steinhauer, 18 Colo. App. 49,69 P. 1075. However, the faculty provides instruction to students and therefore determines who passes courses or examinations. Therefore, it determined that the plaintiff could not sustain an action to force the Board of Trustees to confer a degree, where the plaintiff could not pass the required examination.
Steinhauer does not confer on the faculty the ultimate authority to confer degrees. As the Court of Appeals clearly stated:
 The school furnishes the instruction through its faculty. In the conferring of degrees, it is represented by its board of trustees. It belongs to the faculty, by whom the instruction is imparted, to say whether a student possesses the proper qualifications to entitle him to a diploma. The necessary examination must therefore be conducted by it. It is the school which confers the degree, and the agency through which it acts in so doing is its board of trustees.
Steinhauer, 18 Colo. App. at 50, 69 P. at 1076. Thus, while the determination as to whether a student is qualified to obtain a degree is left to the faculty, the authority to confer degrees remains with the Board of Trustees.
Steinhauer illustrates the distinction between instructional and institutional power. While the power to determine whether a particular student successfully completed a course may lie with a particular faculty member, this does not give the particular faculty member, or the faculty as a whole, the power to determine curriculum. This institutional power would lie with the authority designated to confer degrees, the Board of Trustees.
Based on Hansen, Ahmadieh, andSteinhauer, it is my opinion that provisions in the Colorado School of Mines Faculty Handbook cannot be construed to subject changes to handbook and policies governing the employment relationship between the Faculty and the Colorado School of Mines to the final approval of the Faculty or the Faculty Senate. Such a requirement would be an impermissible delegation of powers, and thus void. The General Assembly vested the power to govern the Colorado School of Mines in the Board of Trustees. This power also is recognized in the Faculty Bylaws provision 4. This section plainly states that the power to effect any change in the contract, i.e., the terms and conditions of the Faculty's employment with CSM is vested with the Board of Trustees.
The Board has the power to promulgate regulations in accordance with this directive. However, the Board can only delegate those powers which are not finally vested in the Board. The "final" approval of the handbook, with its provisions on faculty tenure acquisition, tenure revocation, and other employment related matters would be in derogation of the intent of the General Assembly. Although the Board of Trustees may properly delegate some matters to the Faculty or the Faculty Senate, this opinion does not address such delegations.
SUMMARY
Provisions of the Colorado School of Mines Faculty Handbook cannot be construed to delegate to the faculty, or the Faculty Senate as the faculty's representative, final authority to approve or disprove changes in the Faculty Handbook. The Board has the power to promulgate regulations in accordance with its statutory authority contained in section 23-41-104(1), 9 C.R.S. (1994). By this enactment the General Assembly vested the Board of Trustees with the power to administer, control and manage the Colorado School of Mines.
The Board has the power to delegate some of its statutory authority. However, the Board can only delegate those powers which are not finally vested in the Board. The "final" approval of the handbook, with its provisions on faculty tenure acquisition, tenure revocation, and other employment related matters would be in derogation of the intent of the General Assembly and therefore cannot be construed to delegate this authority.
 GALE A. NORTON Attorney General
 ELIZABETH A. WEISHAUPL Assistant Attorney General
EDUCATION, HIGHER DELEGATION OF AUTHORITY/POWERS BOARDS COLORADO CONSTITUTION, art. VIII, § 5.
SECTION 23-41-104(1), 9 C.R.S. (1994)
The Colorado School of Mines Board of Trustees has constitutional and statutory authority to administer, control and manage the Colorado School of Mines. The Faculty Handbook provisions which purport to convey the final approval authority to the Faculty Senate or the Faculty as a whole for revisions of the Faculty Handbook policies and procedures are an impermissible delegation of the Board of Trustee's authority and are null and void.
[1] Section A-52 of the bylaws also provides that "[t]he Board of Trustees has final authority on matters concerning the contract between the faculty and CSM."