No. 27906

**W. Austin Van Pelt, a/k/a Austin Van Pelt v. The State Board for Community Colleges and Occupational Education, State of Colorado; Arapahoe Community College; and Joseph K. Bailey**

(577 P.2d 765)

Decided May 1, 1978.

318

Shoemaker and Wham, Edward J. Krisor, Jr., for plaintiff-appellant.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, David E. Engdahl, Special Assistant, for defendants-appellees.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellant, Van Pelt, brought this action in the district court pursuant to section 24-4-106, C.R.S. 1973, and C.R.C.P. 106(a)(4), seeking judicial review of a decision of the State Board for Community Colleges and Occupational Education (the board). The board had determined that Arapahoe Community College (the college) had properly reassigned Van Pelt from his position as dean to that of instructor. On review, the district court concluded that all applicable procedural requirements had been met and that the board's action was neither an abuse of discretion nor an act in

excess of jurisdiction. We affirm the district court's decision.

Van Pelt was first employed by the college in 1968 as an instructor. From August, 1970, through June, 1976, he held various administrative positions, culminating in employment as Dean of General Studies from July, 1974, through June, 1976. This employment was on a yearly basis, with a new contract being entered into each year.

On April 19, 1976, the Arapahoe Community College Council (the council) approved the college president's recommendation that Van Pelt be reappointed as dean for the 1976-77 academic year. On May 17, 1976, however, the council changed its position and approved the president's new recommendation that Van Pelt be reassigned to an instructor's position. The reason given for this reassignment was that the college administration was being reorganized and there would only be one instructional dean instead of the former three. In his new position as an instructor, Van Pelt was to receive $17,974.00 for the year, while he would have received $26,000.00 as dean. He accepted the assignment as instructor, but with the specific reservation that he was not waiving any objections to the reassignment.

Van Pelt then initiated proceedings before the board for administrative review of the college's action. He contended that the college had failed to follow statutory and administrative notice requirements,[1] and therefore could not properly terminate his employment as dean. He sought $8,026.00 as damages for the 1976-77 school year salary decrease caused by his reassignment to an instructorship. The board found that all necessary procedures had been followed and denied relief. The district court affirmed, and Van Pelt appeals.

### I. Van Pelt's Claims Against the College and Its President.

At the outset, we address two questions regarding the availability here of judicial review under the State Administrative Procedure Act (APA)[2] and C.R.C.P. 106(a)(4).

■ Van Pelt's amended complaint sought relief under both provisions against the college and its president as well as against the board. The appellees have consistently maintained,[3] however, that the APA is not applicable *at all* to this case, and that relief is not available under C.R.C.P. 106(a) (4) against the college or its president. We agree, and therefore hold that all of Van Pelt's APA claims and his Rule 106 claims against the college and its president should have been dismissed rather than decided on the merits.

---

[1] Van Pelt does not contend that he was denied any procedures required by either the United States or Colorado constitutions.
[2] Section 24-4-101, *et seq.,* C.R.S. 1973
[3] These arguments were presented both in a motion to dismiss and the answer.

## A. *Van Pelt's APA Claim.*

Van Pelt's first claim sought judicial review under section 24-4-106 of the APA. Any party adversely affected or aggrieved by "final agency action" may bring action for judicial review in the district court. Section 24-4-106, C.R.S. 1973. "Agency" is defined as "any board, bureau, commission, department, institution, division, section, or officer of the state, *except . . . state educational institutions administered pursuant to title 23. . . .*" Section 24-4-102(3), C.R.S. 1973 (emphasis added). Since, as the appellees correctly point out, the board and the college are "state educational institutions administered pursuant to title 23," the APA by its terms excludes them and the college president from judicial review under section 24-4-106.[4] Therefore, the trial court had no jurisdiction under the APA, and should have dismissed Van Pelt's APA claims.

## B. *Van Pelt's C.R.C.P. 106(a)(4) Claim.*

The appellees also argued before the district court that Van Pelt's second claim, asserted under C.R.C.P. 106(a)(4), failed to state a claim upon which relief could be granted against either the college or its president. We agree.

Extraordinary relief is available under C.R.C.P. 106(a)(4) where "an inferior tribunal . . . *exercising judicial or quasi-judicial functions,* has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy." (Emphasis added.) The test generally used by this court to determine whether an action is quasi-judicial is to consider whether the function in question involves the exercise of discretion and requires notice and hearing. If any of these elements is absent, the action is usually administrative rather than quasi-judicial. *Englewood v. Daily,* 158 Colo. 356, 407 P.2d 325 (1965). *See also Hoffman v. Fort Collins,* 30 Colo. App. 123, 489 P.2d 355 (1971).

In this case, the notice and hearing requirements that Van Pelt alleges are pertinent apply only to the *board,* not to the college or its president. Section 23-10-202, C.R.S. 1973 (1976 Supp.). Therefore the latter entities' actions were not subject to review under C.R.C.P. 106(a)(4).

In summary, the college and its president should have been dismissed as defendants since judicial review of their decisions was not available under either the APA or C.R.C.P. 106(a)(4). However, since the board's action was properly subject to review under Rule 106(a)(4), we next consider the merits of Van Pelt's claims, as against the board only.

---

[4] We do not mean to imply that *all* APA provisions are inapplicable to state educational institutions. Rather, under section 24-4-102(3), they are inapplicable unless "the context otherwise requires." *See, e.g.,* section 24-4-103(8)(a), C.R.S. 1973 (1976 Supp.), which by its terms is applicable to rules "issued by any agency, *including* state institutions of higher education administered pursuant to title 23. . . ." (Emphasis added.) There is no such language in section 24-4-106.

## II. *Applicability of Section 23-10-101, et seq.,*
### *C.R.S. 1973 (1976 Supp.).*

Van Pelt first contends that the board abused its discretion in approving his reassignment, because the college did not fulfill the procedural requirements set out in section 23-10-101, *et seq.,* C.R.S. 1973 (1976 Supp.). The relevant portions of that article provide as follows:

*"Preliminary procedures — termination of employment by dismissal or nonrenewal of contract.* (1)(a) Notice of dismissal may be given at any reasonable time.

"(b) Notice of nonrenewal shall be given by the board no later than December 15 of the year prior to the year in which the nonrenewed contract is to expire; except that, in the case of a faculty member's first contract, the notice of nonrenewal shall be given no later than February 15 of the year in which the contract is to expire.

"(c) Any such notice pursuant to this section shall be in writing, shall be sent by registered mail to the faculty member, and shall state the reasons for dismissal or nonrenewal of contract." Section 23-10-202, C.R.S. 1973 (1976 Supp.).

The appellees have stipulated that if this section applies, its requirements were *not* met. The question, therefore, is whether it applies. The district court held that it does not, and we agree.

The statutory procedures apply "to all cases involving the termination of employment of *faculty members*" at the subject institutions. Section 23-10-103, C.R.S. 1973 (1976 Supp.) (Emphasis added). The statute defines "faculty member" for these purposes as "a full-time faculty member at an educational institution, including, but not limited to, a teacher, counsellor, librarian, student service personnel member, division chairman, and department chairman. . . ." Section 23-10-102(4), C.R.S. 1973 (1976 Supp.). Given this statutory definition, and the statute's apparent underlying purposes, we hold that Van Pelt in his *administrative capacity and position as dean* was not a "faculty member" to be afforded these protections.

Although the definition of "faculty member" set out above is less than precise, the apparent legislative intent in this statutory scheme is to distinguish between those persons primarily obligated as teachers, *i.e.,* those involved directly in the teaching process itself, and those whose responsibilities involve not teaching, but college administration and management. For example, the legislative declaration states that one of the article's purposes is "to adequately protect academic freedom and intellectual inquiry. . . ." Section 23-10-101(1)(b), C.R.S. 1973 (1976 Supp.).

Moreover, the statutory definition of "faculty member" omits not only deans, but chancellors, vice presidents, directors, business managers, treasurers, and numerous others whose positions usually are classified as "administrative." Implicit in this arrangement is a legislative

determination that the interests of academic freedom would not necessarily be served by extending these procedural protections to administrators in their positions as such, and that practical administrative considerations militate against such an extension. *See Barnes v. Washington State Community College Dist. No. 20,* 85 Wash.2d 90, 529 P.2d 1102 (1975).

We are not unaware that this case does not involve the arrangement common in the academic world of making a joint appointment, concurrently granting a person both the status of dean and that of faculty member, usually with some professorial rank. Of course one having a teaching appointment would retain the protections accorded his or her status of "faculty member" by this statute after accepting such a joint appointment. For example, one might serve simultaneously as both a professor of history and dean of the college of liberal arts. Usually some teaching duties would be performed by such a joint appointee, and therefore, *as to those teaching duties,* the academic freedom rationale would apply with full force. Unfortunately for Van Pelt, however, he did not retain his teaching appointment after becoming dean, and he does not contend that he has been wrongfully deprived of any teaching responsibilities. He challenges only his removal from his *administrative* position. *Cf. Barnes v. Washington State Community College Dist. No. 20, supra.* Policy considerations apparently led the General Assembly to provide that those ultimately responsible for the management of educational institutions should be left relatively free to remove or replace deans, or abolish their positions.

Therefore we conclude that Van Pelt in his capacity as dean was not a "faculty member" entitled to the procedural protections of section 23-10-101, *et seq.,* C.R.S. 1973 (1976 Supp.).

### III. *Applicability of Board Policy BP 3-20.*

■ Primarily in implementation of section 23-10-101, *et.seq., supra,* the board has promulgated its own rules and procedures concerning employees at state educational institutions under its authority. Van Pelt contends that Board Policy BP 3-20 was applicable in this case and entitled him to advance written notice of the college's decision to reassign him to an instructorship. We do not agree.

The requirements of BP 3-20 apply not only to faculty members, but to all "contractual staff personnel." BP 3-20, sec. 3(a). This includes deans and other administrators. BP 3-20, sec. 1(j), and sec. 1(l). The policy applies, however, only in specified circumstances which are not here present.

The statement of policy commences by defining the terms it employs, including "termination," "dismissal," "nonrenewal," "reduction in forces," "suspension," and "reassignment." BP 3-20, sec. 1(b) - 1(g). The policy then goes on to require formal notice and a hearing in cases

involving a *dismissal, nonrenewal* or *reduction in forces*. BP 3-20, sec. 3(c). These procedures, however, are not made applicable to reassignments. The question here presented is whether the college's action against Van Pelt was either a dismissal, nonrenewal, or reduction in forces which entitled him to these procedural protections. We hold that it was not.

An administrative agency's construction of its own regulations is generally entitled to great weight unless it is plainly erroneous or inconsistent with the regulations.[5] *E.g., United States v. Larionoff,* 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). In this case, the board concluded that Van Pelt had been "reassigned" for the purposes of BP 3-20, and therefore was not entitled to the formal procedural safeguards provided for cases involving dismissal, nonrenewal, or reduction in forces. Since "reassignment" is broadly defined in the Board Policy as any change in "job title, job description and/or assignment of a contractual staff person," the board's interpretation is plainly reasonable and we will not disturb it on review.

### IV. *Van Pelt's Contract and Estoppel Claims.*

Finally, Van Pelt contends that the council's action on April 19, 1976, approving his reappointment as dean, created either a contract or a promissory estoppel that prevented the college from later reassigning him as an instructor. He argues, therefore, that the board abused its discretion or exceeded its jurisdiction when it approved his reassignment by the college. We do not agree.

The hiring power at state community colleges rests ultimately in the board, not the college council. Although there is no statutory provision expressly creating that power, the board has "the authority, responsibility, rights, privileges, powers, and duties customarily exercised by the governing board of institutions of higher education. . . ." Section 23-60-202(1), C.R.S. 1973. A review of statutes relating to other governing boards in Colorado clearly indicates that the duty to hire faculty members and administrative personnel *does* "customarily" rest in those boards. For example, the University of Colorado Board of Regents has the duty to "appoint the requisite number of professors, tutors, and all other officers";[6] the state board of agriculture is authorized to appoint "professors, tutors, and employees" at Colorado State University[7] and the president, executive officers, faculty, and employees of Fort Lewis College.[8]

---

[5] This is not necessarily true if the regulation is "interpretative," as opposed to "legislative" — that is, if it is not passed pursuant to an explicit or implicit legislative grant of power to the agency to promulgate the rules. *See generally* 1 *Davis, Administrative Law Treatise* §§5.01-5.11 (1958). Here, the board was clearly authorized to promulgate policies consistent with the statute's minimum standards. *See* section 23-5-106 and section 23-60-202(1)(j), C.R.S. 1973.
[6] Section 23-20-112, C.R.S. 1973.
[7] Section 23-31-109, C.R.S. 1973.
[8] Section 23-52-104, C.R.S. 1973.

We conclude, therefore, that the General Assembly intended that the board's general powers, as granted in section 23-60-202(1), *supra,* should include the duty to approve appointments of faculty and administrative personnel. Absent legislative authorization, that duty could not be delegated to the college council, expressly or impliedly.[9] *University of Colorado v. Silverman,* 192 Colo. 75, 555 P.2d 1155 (1976); *Big Sandy School District v. Carroll,* 164 Colo. 173, 433 P.2d 325 (1967). Therefore, regardless of the council's action approving Van Pelt's reappointment, no contract could come into being absent action by the board. *University of Colorado v. Silverman, supra.*

█    Similarly, even assuming that the doctrine of estoppel could appropriately be applied in this case, Van Pelt could not show the requisite reasonable reliance on the council's action, since he was charged with knowledge that the board had exclusive hiring authority and that any hiring decision would be subject to its approval. *University of Colorado v. Silverman, supra; Big Sandy School District v. Carroll, supra.*

Therefore, since no contract came into existence, and the circumstances did not justify applying the estoppel doctrine, the trial court correctly held that the board did not abuse its discretion or exceed its jurisdiction in approving Van Pelt's assignment.

Accordingly, the trial court's judgment is affirmed.

MR. JUSTICE GROVES concurs in the result.

MR. CHIEF JUSTICE PRINGLE does not participate.

---

[9] *Cf.* section 23-60-206(2)(d), C.R.S. 1973:

"(2) Each college council has the following duties with respect to the community and technical college for which it was appointed:

* * * *

"(d) To confirm appointments to the professional staff as recommended by the chief administrative officer."

This provision, which establishes the procedure for a college's final action in the hiring process, does not remove the board's ultimate authority to approve or disapprove the college council's hiring decisions.