**REGENTS OF THE UNIVERSITY OF COLORADO, Plaintiff–Appellant,**

v.

**The CITY AND COUNTY OF DENVER, Acting By and Through its BOARD OF WATER COMMISSIONERS, Defendant–Appellee.**

**No. 95CA1791.**

Colorado Court of Appeals,
Div. III.

Nov. 29, 1996.

Gale A. Norton, Attorney General, Joanne M. McDevitt, Stephen Zweck–Bronner, Simon P. Lipstein, Denver, for Plaintiff–Appellant.

Patricia L. Wells, Henry C. Teigen, Amy L. Moore, Michael L. Walker, Denver, for Defendant–Appellee.

Opinion by Judge JONES.

In this C.R.C.P. 106(a)(4) action, plaintiff, the Regents of the University of Colorado (University), appeal from the judgment of the trial court upholding the decision of defendant, the City and County of Denver, acting by and through its Board of Water Commissioners (collectively, the Board), in which the Board determined that the University is not entitled to credit for approximately $1 million in system development charges

for the reconfiguration of the water supply system for the Health Sciences Center (HSC). We affirm.

. In 1962, the University submitted two applications to the Board to obtain water service for facilities located at the HSC. The Board issued the University two licenses which allowed it to install two ten-inch taps on two separate water mains. These connections were made in 1963 and were physically joined together into a single ten-inch line which serviced the HSC through an eight-inch meter. At that time, the Board did not assess a licensee a system development charge for connecting to its water facilities.

Subsequently, the Board enacted a rule, effective January 1, 1973, permitting it to assess a system development charge for any license issued after that date. *See Operating Rules of Board of Water Commissioners of City & County of Denver* (Operating Rules).

That rule, Operating Rules § 2.042, provides in pertinent part that:

[N]o license for water service shall be issued by the Water Department or any other public agency authorized by the Department to issue such licenses without prior payment of an appropriate system development charge. . . .

A "system development charge" is defined as:

A charge assessed to an applicant for a license to receive water through the Denver system or a system deriving its supply from Denver. Subject to exceptions hereinafter detailed, such a charge is assessed upon application for a new tap, and is based upon the size of connection required. The charge may be used to finance system improvements and additions, including but not limited to capital improvements, conservation, and acquisition of water rights.

Operating Rules § 1.06(*o*).

. If the holder of a license desires to change or modify a service connection, the Board's operating rules provide that:

*Replacement, Enlargement and Elimination of Taps.* In the event a service connection to a premise must be enlarged or replaced, the Water Department will calculate and charge an amount equal to the difference, if any, between the system development charge for the enlarged or replacement service connection(s) and the charge applicable or which would have been applicable to the service disconnected, utilizing then current charge schedules. . . .

Operating Rules § 2.043.

Commencing in 1988, the University entered into informal discussions with the Denver Water Department (Department) concerning reconfiguration of the water supply system for the HSC. In 1990, at the suggestion of the Department, the University replaced the eight-inch meter with a ten-inch meter to alleviate problems with the water supply to HSC.

In October 1993, the University wrote to the Department seeking credit for the system development charges applicable to the two ten-inch taps for which it had been granted licenses in 1962. After conducting an informal hearing, the Department issued a letter ruling refusing to give the University credit for more than one ten-inch tap, maintaining that the purpose of one of the taps was to provide backup in case of a service outage and that the taps, as configured, could not provide the capacity of two separately metered ten-inch taps. The Department also noted that, pursuant to Operating Rules § 2.063(g), which provides for cancellation of a tap that is unused or generates no revenue for five consecutive years, one of the taps would have been cancelled in 1968.

The University appealed the Department's decision to a hearing officer for the Board. The hearing officer, after an evidentiary hearing, issued a written decision finding that the University was entitled to system development credits for only one of the two ten-inch taps.

The University then appealed directly to the Board. The Board upheld the hearing officer's decision finding that it was not against the manifest weight of the evidence and that it was a reasonable interpretation of the operating rules under the facts presented.

The University subsequently sought review in the district court pursuant to

C.R.C.P. 106(a)(4). The district court found that the Board's interpretation of its operating rules was reasonable and supported its decision to give the University credit for only one ten-inch tap. Accordingly, it affirmed the Board's decision. The University appeals that decision to this court.

## I.

Appellate review under C.R.C.P. 106(a)(4) is limited to consideration of whether the administrative agency "exceeded its jurisdiction or abused its discretion." Under this standard, the reviewing court is required to reverse the administrative agency's decision if the agency applied an erroneous legal standard or if there is no competent evidence to support it. *See City of Colorado Springs v. Givan*, 897 P.2d 753 (Colo.1995); *Nicholas v. North Colorado Medical Center, Inc.*, 902 P.2d 462 (Colo.App.1995), *aff'd*, 914 P.2d 902 (Colo.1996).

Interpretation of a rule by the agency charged with its enforcement is generally entitled to great deference. *Halverstadt v. Department of Corrections*, 911 P.2d 654 (Colo.App.1995). The agency's interpretation is to be accepted if it has a reasonable basis in law and is warranted by the record. *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981).

However, if the agency's interpretation is inconsistent with its own rules, then that interpretation is not entitled to deference. *Van Pelt v. State Board for Community Colleges & Occupational Education*, 195 Colo. 316, 577 P.2d 765 (1978).

## II.

The University contends that the Board abused its discretion because it failed to follow its own operating rules. We disagree.

The Board, in determining that the University was entitled to credit for only one of the two ten-inch taps, found that because the two taps had been connected together it was physically impossible for the University to have received water service in excess of ten inches of capacity. In response to the University's contention that it had two licenses and two taps, the Board noted that a tap, by itself, did not constitute water service.

The Board explained that, since 1957, water service was provided to a property only if a service line and a meter have been installed. Thus, the Board noted that, even though the University had licenses for two ten-inch taps, it could not have increased the amount of water it had received without installing a new service line and meter.

The Board concluded that, in determining the amount of "service disconnected" for purposes of Operating Rules § 2.043, all components of water service to the HSC had to be considered and measured. Applying this standard, it determined that only ten inches of service were being disconnected; therefore, the University was entitled to credits for only ten inches of capacity.

The University argues that the Board's interpretation fails to give proper effect to the use of the defined terms "tap," "service connection," and "connection" in Operating Rules § 2.043. We are not persuaded.

The term "tap" is defined in Operating Rules § 1.06(p) as: "A physical connection to a distribution main which, together with appropriate license, effects water service to a licensed premises." Operating Rules § 1.06(c) provides that the terms "connection," "service connection," and "tap," as utilized in the operating rules, are synonymous.

Based on these definitions, the University states that it clearly had two "taps" or "service connections" which it sought to replace. The University asserts that even though the "taps" were physically joined together, they both were connected to a service line and a meter and provided water service to the premises. It argues, contrary to the Board's interpretation, that, when a licensee seeks to enlarge or replace a "tap" or "service connection," Operating Rules § 2.043 does not condition the number of credits to which a licensee is entitled on the amount of water the premises served may receive through the service line and meter. Rather, the University contends, based on the definition of "system development charge" in Operating Rules § 1.06(o), that the applicable charge is as-

sessed per license and it is uncontroverted that it has two licenses.

However, as quoted above, Operating Rules § 2.043, which is entitled, "Replacement, Enlargement and Elimination of *Taps,*" provides that if a licensee seeks to replace or enlarge a "service connection," the Department will "calculate and charge an amount equal to the difference, if any, between the system development charge for the enlarged or replacement *service connection* and the charge applicable or which would have been applicable to the *service disconnected ....*" (emphasis added)

The phrase "service disconnected" in Operating Rules § 2.043 does not necessarily refer to the "service connection" or "tap" that the licensee seeks to replace or enlarge. Rather, as determined by the Board, the amount of "service disconnected" can be reasonably construed as referring to the actual amount of water service that is cut off for a property. Thus, it was proper for the hearing officer to consider and measure all components of the water service to HSC.

Therefore, insofar as the Board's interpretation is not "plainly erroneous or inconsistent with the regulations," we conclude that it is entitled to deference by this court. *Van Pelt v. State Board for Community Colleges & Occupational Education, supra,* 195 Colo. at 323, 577 P.2d at 770.

### III.

 The University also contends that the Board abused its discretion because its decision is not supported by any competent evidence in the record. More specifically, the University contends that the Board, through the hearing officer, erred in refusing to consider certain evidence regarding the reasons two taps were installed. In addition, the University argues that the Board created a false issue by noting that the second tap would in fact provide redundancy of supply. Insofar as the Board's determination does not depend upon the underlying purposes for the two taps, we reject the University's contention. In any event, the record reflects that the University was able to present evidence to the hearing officer regarding HSC's planned growth and the need for additional water.

 We also reject the University's contention that the Department impliedly waived its right to assess system development charges when it failed (1) to assess such charges in 1990 when the University replaced the eight-inch meter with a ten-inch meter and (2) to cancel one of the University's two licenses as permitted by its operating rules. Based on the evidence presented, we conclude that the Department's actions do not constitute waiver as a matter of law. *See Duran v. Housing Authority,* 761 P.2d 180 (Colo.1988)(if waiver is implied by conduct, the conduct must be free from ambiguity and clearly manifest the intention not to assert the benefit).

We, therefore, conclude that the Board did not abuse its discretion in determining that the University was entitled to system development credits based on one ten-inch tap.

The judgment is affirmed.

ROTHENBERG and BRIGGS, JJ., concur.