No. 75,788

BARBARA M. BROWN, *Appellee,* v. BOARD OF EDUCATION, UNIFIED SCHOOL DISTRICT NO. 333, CLOUD COUNTY, KANSAS, *Appellant.*

928 P.2d 57

Opinion filed December 6, 1996.

*Fred W. Rausch, Jr.,* of Topeka, argued the cause, and *Larry S. Vernon,* of Vernon, Retter & Long, of Concordia, was on the briefs for appellant.

*Terry D. Criss*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This is an appeal by the Board of Education, Unified School District No. 333 (Board), from the district court's review of its decision not to renew the contract of administrator Barbara M. Brown.

The basic facts are not in dispute, and the uncontested record shows the following:

Brown was initially employed as the principal of Washington Elementary School and Concordia Middle School for the 1991-1992 school year. In each of the ensuing 3 school years, 1992-1993, 1993-1994, and 1994-1995, her contract was renewed.

On March 13, 1995, the Board adopted a resolution directing that Brown be notified of the Board's intent not to renew her contract of employment for the 1995-96 school year. Brown received this notice on the following day and on March 23, 1995, requested a meeting with the Board in executive session concerning the non-renewal of her contract, pursuant to K.S.A. 72-5453.

On March 30, 1995, within the time required by K.S.A. 72-5453(b), the Board met with Brown in executive session. At this

meeting, the Board provided Brown with the following document informing Brown of its decision not to renew her contract:

"Barbara M. Brown has not shown consistent organizational and instructional leadership skills at the Concordia Middle School and the Washington Elementary School. This has created a lack of support and trust among the staff. This has also created a void at Washington Elementary School and Concordia Middle School in developing innovative and visionary leadership to best serve staff and students in our district."

Brown was given the opportunity to respond to the Board's statement. She defended her performance to the Board, reviewed her performance evaluations, and explained how she had responded to shortcomings in those evaluations in the past. The Board permitted her to make her presentation, but did not question her or respond. Neither party had legal counsel present. A record was not taken of the meeting.

In a resolution adopted the same day and made a part of the Board minutes, the Board recounted that after Brown's presentation it "thoroughly discussed and reconsidered its reasons for nonrenewal" and decided not to renew Brown's contract for the 1995-96 school year.

Brown timely appealed the Board's decision to the district court and joined certain causes of action in tort. The district court bifurcated the tort claims from the appeal and resolved the appeal in the case now before us.

The district court found that Brown was denied due process because the Board did not show good cause for the nonrenewal of her contract, the Board's action was arbitrary and it was not supported by substantial evidence, and the Board's reasons were too conclusory, thereby preventing meaningful judicial review of the substantive grounds of the Board's decision.

The district court certified its order concerning the review of the Board's decision as a final appealable order pursuant to K.S.A. 60-254 and K.S.A. 60-2102(b). The Board appealed.

Subsequent to argument to this court we asked the parties to submit supplemental briefs on the following additional questions:

(1) Is the "meeting" that a nonrenewed principal is granted with the Board of Education under K.S.A. 72-5453 a quasi-judicial act allowing judicial review under K.S.A. 60-2101(d)?

(2) Should the Court of Appeals' decision in *Allen v. U.S.D. No. 436*, 19 Kan. App. 2d 873, 878 P.2d 223 (1994), be disapproved?

*Standard of Review:*

The present review of the Board's action was taken pursuant to K.S.A. 60-2101(d). This statute confers jurisdiction to review the action of a political subdivision only where it is exercising "judicial or quasi-judicial functions." If a school board is acting in such a capacity, the district court is limited to determining if the Board's decision was within its scope of authority, whether it was substantially supported by evidence, and whether it was fraudulent, arbitrary, or capricious. *Butler v. U.S.D. No. 440*, 244 Kan. 458, 463, 769 P.2d 651 (1989). On appeal from the district court, we review the Board's decision as though the initial appeal had been purported to have been made directly to us. We are to employ the same standard of review as the district court if the Board's decision is a judicial or quasi-judicial function. However, if the Board's decision is not a judicial or quasi-judicial function, K.S.A. 60-2101(d) grants no right of appeal.

*Issues on appeal:*

Brown maintains the Board's decision must be reversed because it was beyond the Board's authority in that the Board "failed to act in a quasi-judicial manner" by failing to investigate the facts and weigh the evidence, and it denied her procedural due process by failing to show good cause for nonrenewing her contract, failed to tell her the reasons for the nonrenewal in advance of the meeting of the Board, and failed to present evidence to support its reasons for nonrenewal of her contract during the meeting with the Board. Brown also argues the Board acted without the support of substantial evidence. Finally, Brown argues the Board's decision was arbitrary and capricious because it was unsupported by evidence and because the Board failed to comply with the Evaluation of Certificated Personnel Act, K.S.A. 72-9001 *et seq.*, in the year of her nonrenewal.

The Board contends it did not exceed its authority because it precisely followed the requirements of the Kansas Administrators'

Act (Act), K.S.A. 72-5451 *et seq.*, for nonrenewing the contract of an administrator. The Board contends administrators are not provided with the broad property interests in contract nonrenewals under the Act that tenured teachers are provided under K.S.A. 72-5436 *et seq.*, including the requirement of good cause for nonrenewal. The Board argues the question of whether it complied with K.S.A. 72-9001 *et seq.* is not properly raised, nor are those provisions applicable in this case. The Board argues that because it fulfilled the requirements of the Act it did not act arbitrarily and capriciously. The Board further contends Brown was provided with all process she is due because the Act does not require that a record be made, that evidence be presented, that she be given advance notice of the reasons for the nonrenewal, or that the Board respond to the administrator's presentation.

Brown argues in her supplemental brief that proceedings under the Act are quasi-judicial in nature, appeal rights exist under K.S.A. 60-2101(d), and the reasoning and result in *Allen v. U.S.D. No. 436* should be approved.

The Board argues in its supplemental brief that the meeting a nonrenewed administrator has with the Board is not quasi-judicial in nature, the decision of the Board is not an appealable order pursuant to K.S.A. 60-2101(d), and the reasoning and decision in *Allen v. U.S.D. No. 436* should be disapproved.

The parties frame the issues differently, but the central arguments they address in their briefs can be classified and resolved in the following questions: (1) Does the Kansas Administrators' Act imply a substantive restriction that the contracts of administrators who have been employed at least 2 consecutive years cannot be nonrenewed without "good cause"? (2) Does an administrator entitled to the explicit procedural protections of the Kansas Administrators' Act also have a right to have evidence presented to justify the reasons for nonrenewal, the right to receive advance notice of the reasons for nonrenewal, the right to require response by the school board to an administrator's presentation, and the right to have a record of the proceedings and deliberations of the board? (3) If good cause is not required to nonrenew the contract of an administrator and procedural due process rights are not invoked,

is the meeting reviewing a decision to nonrenew an administrator's contract quasi-judicial?

*Statutory provisions:*

This case involves the application and construction of provisions of the Kansas Administrators' Act. These provisions impose certain requirements when a school board considers nonrenewing the contract of an administrator who has completed 2 consecutive years of employment as an administrator in the school district. K.S.A. 72-5455. The record is clear that Brown had been employed by U.S.D. No. 333 for a period in excess of 2 years and the statutory provisions apply.

In cases of administrators employed for at least 2 consecutive years, the Act requires the following:

"[W]ritten notice of a board's intention to not renew the contract of employment of an administrator shall be given to the administrator on or before April 10 of the year in which the term of the administrator's contract expires. An administrator shall give written notice to a board on or before May 10 of the administrator's rejection of renewal of a contract of employment." K.S.A. 72-5452(a).

"(a) Whenever an administrator is given written notice of a board's intention to not renew the administrator's contract, the administrator may request a *meeting* with the board by filing a written request therefor with the clerk of the board within 10 days from the date of receipt of the written statement of nonrenewal of a contract.

"(b) The board shall hold such *meeting* within 10 days after the filing of the administrator's request. The *meeting* provided for under this section shall be held in executive session and, at such *meeting*, the board shall specify the reason or reasons for the board's intention to not renew the administrator's contract. The administrator shall be afforded an opportunity to respond to the board. Neither party shall have the right to have counsel present. Within 10 days after the *meeting*, the board shall reconsider its reason or reasons for nonrenewal and shall make a final decision as to the matter." (Emphasis added.) K.S.A. 72-5453.

It should also be noted that K.S.A. 72-5451(b) specifically states: "The term administrator shall not mean or include a superintendent of schools."

Neither party disputes that both parties complied with all applicable time deadlines of K.S.A. 72-5452 and 72-5453, that the Board gave timely notice of its intent not to renew Brown's contract, that the Board held a meeting in executive session at Brown's

request, that the Board gave Brown its reason for not renewing her contract in writing, that Brown was permitted to respond to the Board, that neither party was represented by counsel during the executive session, and that the Board made its final determination to not renew Brown's contract after this meeting.

*Does the Kansas Administrators' Act imply a substantive restriction that the contracts of administrators who have been employed at least 2 consecutive years cannot be nonrenewed without "good cause"?*

Essentially, Brown's argument is that under the Act, after she had received two successive contracts, her contract could be non-renewed only for good cause and therefore she had a property interest in continued employment sufficient to merit constitutional due process protection.

The Board, on the other hand, maintains the Act prescribes only technical formalities for nonrenewal of contracts of administrators and Brown's interest in continued employment extends no further than the assurance that those technical requirements are fulfilled.

In Kansas, the general rule is that absent a contract between the employer and employee providing otherwise, an employee has no right to continued employment, and either party may terminate the employment relationship without cause. See *Pilcher v. Board of Wyandotte County Comm'rs,* 14 Kan. App. 2d 206, Syl. ¶ 1, 787 P.2d 1204, *rev. denied* 246 Kan. 768 (1990). However, where by contract or by statute employment by a governmental entity continues until the employer shows "cause" for terminating the employment, discontinuing employment requires that the employer meet an explicitly defined legal standard and that the employee be given a due process hearing, bringing the action into the realm of a quasi-judicial decision. See *Gorham v. City of Kansas City,* 225 Kan. 369, 373-74, 590 P.2d 1051 (1979).

In interpreting the Act, we will look to the plain meaning of the statutes, the legislative history, and fundamental rules of statutory construction.

Initially, we note the fundamental construction rule that it is the intent of the legislature, where it can be ascertained governs the

construction of a statute. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. Stated another way, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992). The court will not read into a statute that which the legislature has plainly excluded. See *Joe Self Chevrolet, Inc. v. Board of Sedgwick County Comm'rs*, 247 Kan. 625, 633, 802 P.2d 1231 (1990).

Nevertheless, where the face of the statute leaves its construction uncertain, the court may look " 'to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested.' " *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994) (quoting *Brown v. Keill*, 224 Kan. 195, Syl. ¶ 3, 580 P.2d 867 [1978]).

We start our analysis of the construction of the statutes in issue by noting the difference between what is required when a hearing is statutorily provided and what is required when the statute provides only that the parties engage in a meeting.

A "hearing" is described as "[a] proceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or law to be tried, in which witnesses are heard and evidence presented. It is a proceeding where evidence is taken to determine issue of fact and to render decision on basis of that evidence." Black's Law Dictionary 721 (6th ed. 1990).

A "meeting" is much differently and exceedingly less restrictively defined as "[a] coming together of persons; an assembly. Particularly, in law, an assembling of a number of persons for the purpose of discussing and acting upon some matter or matters in which they have a common interest." Black's Law Dictionary 982 (6th ed. 1990).

With the fundamental difference between a hearing and a meeting clearly in mind, it is helpful to consider the path of H.B. 2321 in the 1981 legislative session. Before its passage as the Kansas

Administrators' Act, it was amended in potentially significant ways from its form as introduced. The legislature deleted a separate requirement for written statements of reasons for nonrenewal and a hearing, substituting a meeting with the school board and a requirement for the board to specify reasons for the nonrenewal at that meeting. The provision for an open hearing was eliminated in favor of a requirement that the meeting take place in executive session. Furthermore, the legislature altered the proposed bill to provide that neither party would be entitled to counsel. 1981 H.B. 2321 as amended by the House and Senate Committees on Education.

The legislative history of the Act is inconsistent as to whether a requirement of good cause was intended in the original bill. However, amendments to the bill clearly moved away from an open hearing with the right to counsel and advance written reasons for nonrenewal to a much more limited private meeting between an administrator and a school board. 1981 H.B. 2321 by Committee on Education (By Request) 2-10.

At the time of the enactment of the Act, the Kansas Supreme Court had decided *Gillett v. U.S.D. No. 276*, 227 Kan. 71, Syl. ¶ 1, 605 P.2d 105 (1980), in which nonrenewal of contracts of tenured teachers was found to require good cause even though such a requirement was not specifically stated in the governing statutes. However, the key features of teacher tenure on which the *Gillett* court relied to find a good cause requirement are not present in the Kansas Administrators' Act, supporting the conclusion that good cause is implicitly required to nonrenew tenured teachers but not for administrators. See 227 Kan. at 75-78.

In the statutory scheme governing the nonrenewal of tenured teachers' contracts, the legislature provided evidence of its intent that a teacher's employment should continue so long as the teacher is competent: "[A]ll contracts of employment of teachers in the public schools in the state shall continue in full force and effect during good behavior and efficient and competent services rendered by the teacher, and all contracts of employment shall be deemed to continue for the next succeeding school year . . . ."

K.S.A. 72-5411(a). The Kansas Administrators' Act contains no similar language.

Furthermore, the legislature has granted teachers much more comprehensive procedural protection from discharge consistent with an expectation of continued employment, absent substantial reason for nonrenewal. Through K.S.A. 72-5436 *et seq.*, the legislature has mandated for tenured teachers advance written notice of the reasons for nonrenewal and a hearing before an impartial hearing officer, K.S.A. 72-5438(a); the right to legal counsel, K.S.A. 72-5439(a); the right to present witnesses, K.S.A. 72-5439(c); the right to cross-examination, K.S.A. 72-5439(b); the right to present testimony, K.S.A. 72-5439(d); the obligation for substantial evidence to support the decision in the hearing, K.S.A. 72-5439(f); and a burden of proof imposed upon the school board and subpoena power, K.S.A. 72-5442. None of these protections, which caused this court to find a good cause requirement for nonrenewing tenured teachers' contracts in *Gillett,* 227 Kan. at 75-78, are provided by the legislature to administrators by the Kansas Administrators' Act.

The legislature is presumed to have been familiar with *Gillett* and our reasoning therein. See *State v. Trudell,* 243 Kan. 29, 34, 755 P.2d 511 (1988). If the legislature had intended the courts to imply a good cause requirement in nonrenewal of administrators' contracts, it could have provided language similar to that which we found controlling in *Gillett.* It did not.

Although this issue has not previously been presented to this court for determination, similar issues have been considered by Kansas federal district courts, with slightly different results.

In *Burk v. Unified School Dist. No. 329, Wabaunsee Cty.,* 646 F. Supp. 1557 (D. Kan. 1986), Chief Judge O'Connor held that a principal did not have a property interest in continued employment and that the principal's liberty interest was not violated by charges made against him in his job evaluation. However, dicta comparing the Teachers' Due Process Act with the Administrators' Act stated:

"Unlike the Due Process Act, the Administrators' Act does not provide the nonrenewed tenured employee the right to counsel or the right to present witnesses or cross-examine the Board's witnesses. On the other hand, it appears that the

same good cause requirement implied in the Due Process Act should also be implied in the Administrators' Act, such that tenured administrators may be renewed for good cause only. (No case law exists on this issue, and the Administrators' Act, like the Due Process Act, never uses the words 'good cause.')" 646 F. Supp. at 1562.

Interestingly, Chief Judge O'Connor also heard *Peterson v. Unified School Dist. No. 418*, 724 F. Supp. 829 (D. Kan. 1989), in which it was held that a principal was afforded due process by the manner in which the nonrenewal decision was reached and the decision did not implicate the principal's liberty interest. Although this opinion refers to a principal's right to a "hearing" rather than the statutorily designated "meeting," no mention is made of the *Burk* dicta, nor is any positive statement made which would indicate that any kind of a "good cause" requirement exists for the nonrenewal of a Kansas school administrator.

Chief Judge O'Connor held there were no issues of material fact as to whether the school district had complied with the Administrators' Act, and there was a specific finding that the procedures provided in K.S.A. 72-5452 and K.S.A. 72-5453 sufficiently protect the property interests of school administrators. The specific holding was:

"The requirement that the school board specify the reasons for its intent not to renew discourages unlawful or arbitrary action. Since administrators not only have the opportunity to request a hearing but also the opportunity to respond to the reason provided for nonrenewal, we believe the process is fundamentally fair. Finally, procedural requirements currently employed allow the school board to renew contracts of individuals wrongfully denied continued employment." 724 F. Supp. at 834.

The third Kansas federal district court case to consider this issue is *Pierce v. Engle*, 726 F. Supp. 1231 (D. Kan. 1989), decided by Judge Saffels approximately 30 days after the *Peterson* decision. In *Pierce*, the argument that a good cause requirement should be implied in the Administrators' Act was specifically rejected. The court noted the principal in *Burk* had only been employed for 1 year rather than for the 2-year period required for the protections of the Act to attach. Thus, Judge Saffels' reasoned the question of

the interpretation of the Act was not squarely before the court in *Burk*, but was in *Pierce*.

Judge Saffels recognized the fundamental difference between the requirement for a "hearing" and a "meeting" by stating that after a board gives an administrator the notice of nonrenewal, the

"administrator may request a 'meeting' with the board pursuant to K.S.A. 72-5453 at which the board is to specify the reason or reasons for nonrenewal, the administrator is afforded an opportunity to respond to those reasons, and the board may reconsider its reasons for nonrenewal and make a final decision regarding nonrenewal. K.S.A. 72-5453(b). Neither party shall have a right to have counsel present at the meeting. K.S.A. 72-5453(b).

"The minimal procedural requirements set out in the Administrators' Act stand in sharp contrast to the detailed requirements contained in the earlier enacted Teachers' Due Process Act, K.S.A. 72-5436, et seq." 726 F. Supp. at 1236-37.

Judge Saffels went on to state:

"In light of the differences between the two statutes, and because the court must presume that the Kansas Legislature intended to accord different treatment to teachers and administrators, the court finds that Preston Pierce cannot base his property interest claim upon the Administrators' Act. When it enacted the Administrators' Act in 1981, the Legislature was presumably aware of the Teachers' Due Process Act and the *Gillett* decision. In addition to the clear language of the statute, the legislative history of the Administrators' Act indicates that the Legislature intended to afford less procedural protection to administrators than to teachers, including the fact that all references to a 'hearing' in the proposed legislation were changed to 'meeting.' H.B. 2321, § 3(b) (as amended). *See* also 1981 *Senate and House Journal* 354-55 (March 6, 1981). Moreover, the court finds that affording different levels of due process protection to teachers and to administrators respectively is not unreasonable, given that administrators serve as the policy-making arm of a board of education." 726 F. Supp. at 1237.

In *Allen v. U.S.D. No. 436*, 19 Kan. App. 2d 873, 878 P.2d 223 (1994), the primary issue was whether a school board's decision not to renew an administrator's contract under K.S.A. 72-5451 *et seq.* is the exercise of a quasi-judicial function and subject to appeal under K.S.A. 60-2101(d). Our Court of Appeals noted the differences of opinions between the *Pierce* and *Burk* cases, stating: "We have a veritable cornucopia of judicial possibilities to choose from. Although, for the above-cited reasons, the issue is not clear, we reverse the trial court's finding that Allen had no right to appeal under K.S.A. 1993 Supp. 60-2101(d) and remand for further pro-

ceedings." 19 Kan. App. 2d at 878. The Court of Appeals held the decision not to renew an administrator's contract was quasi-judicial in nature; however; it made no determination as to the requirement for good cause in the nonrenewal of an administrator's contract.

It should further be noted that another marked difference between the employment contracts of teachers and administrators is the 1-year time frame of teachers' contracts, while administrators are often employed for longer periods under a single contract. Additionally, a graduated level of obligations or the lack thereof owed by school boards to their employees is shown by the fact that school superintendents were specifically removed from coverage by the Act and are true employees-at-will.

Although the wording of acts from other states will vary, a similar Illinois statute, Ill. Comp. Stat. ch. 105, 5/10-23.8b (1994), which related to reclassification of principals, gave such administrators the right to a private hearing with the school board similar to that created under the Kansas Administrators' Act. In *Lyznicki v. Bd. of Ed. Sch. Dist. 167, Cook Cty.*, 707 F.2d 949 (7th Cir. 1983), the statute was held to create no requirement that a board have cause for reclassifying a principal. The court stated:

"Although the statute confers a right to a hearing, no standards are prescribed for the board to follow at the hearing; it seems it can reclassify a principal, after expiration of his yearly contract, for any reason or no reason. . . . Taking the statute as a whole, it makes employment as a principal employment at will, which *Roth* held created no Fourteenth Amendment property right, 408 U.S. at 578, 92 S. Ct. at 2709, and which indeed is the opposite of the lifetime (tenure) employment that *Perry* held was a Fourteenth Amendment property right. A mere right to notice and a hearing, which places no more constraint on the employer's freedom of action than is inherent in having to confront the employee . . ., does not change the essential character of the relationship as one of employment at will; it does not convert it into a form of tenure employment and thus create a Fourteenth Amendment property right." 707 F.2d at 952.

The Illinois court in *Swanson v. Board of Education*, 135 Ill. App. 3d 466, 481 N.E.2d 1248 (1985), held the fact the statute requires no cause for reclassification does not render the procedures granted to principals ineffective. The court noted it does give the right to notice and the opportunity to discuss the reclassifica-

tion with someone other than the superintendent of schools. 135 Ill. App. 3d at 474-75.

We believe the legislature clearly intended to limit the rights and procedures granted to administrators to a "meeting" only, unencumbered by the presence of counsel, the presentation of evidence, or any more formalized procedures which would be required had it designated that a "hearing" take place. As such, we hold that an administrator who has been employed by a school district for at least 2 consecutive years can be nonrenewed without a showing of good cause.

*Does an administrator entitled to the explicit procedural protections of the Kansas Administrators' Act also have a right to have evidence presented to justify the reasons for nonrenewal, the right to receive advance notice of the reasons for non-renewal, or the right to have a record of the proceedings and deliberations of the board?*

Brown contends she was also entitled to procedural protections beyond those explicitly provided in the Act. Two sources are claimed for such protections. First, she argues the nature of a quasi-judicial function requires that the political subdivision provide her with these procedures. Second, she argues procedural due process requires that she be accorded these additional protections.

Although procedural protection may also be based on legislative enactments, there is clearly no statutory basis for the additional protections Brown claims in the present case. The legislature plainly contemplated and rejected granting administrators some of the procedural protections Brown now contends she should receive. By amendment to H.B. 2321 as it was initially submitted, the House and Senate substituted an informal private meeting for an open hearing and substituted a statement of reasons for nonrenewal at the meeting for advance notification of the reasons in writing.

Brown makes, in essence, a bootstrapping argument: She argues the action of nonrenewing her contract is made "quasi-judicial" by the procedures required by the Act, which designation, in turn, requires procedures beyond those required by the Act. Brown con-

tends the record fails to show that the Board adequately investigated facts and weighed evidence, which is a distinguishing characteristic of quasi-judicial actions, and therefore acted outside the scope of its authority. See *Schulze v. Board of Education*, 221 Kan. 351, 354, 559 P.2d 367 (1977) (defining quasi-judicial functions as those which involve a discretionary act *of a judicial nature* taken by a body empowered to investigate facts, weigh evidence, and draw conclusions as a basis for official actions). It is clear from our previous holding herein that the meeting between the administrator and the Board has none of the formalities of a hearing or any other judicial-type proceeding.

Once again, it is helpful to look to the definition of "quasi-judicial," which Black's defines as

"[a] term applied to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." Black's Law Dictionary 1245 (6th ed. 1990).

The term quasi-judicial, used to describe the nature of the decision-making process required by statute or constitutional due process, is descriptive rather than prescriptive. Any rights Brown may have to certain procedures come not from the label applied to the decision-making power the Board uses, but from a statute or contract imposing certain procedures invoking the protections of the Due Process Clause. In addition, even if the Board were exercising a quasi-judicial function, which we hold it was not, it would not be subject to inquiry concerning its mental processes in reaching a decision. *Kosik v. Cloud County Community College*, 250 Kan. 507, 517, 827 P.2d 59, *cert. denied* 506 U.S. 867 (1992). Thus, the merits of Brown's argument that she was entitled to have evidence presented, receive advance notice of the reasons for nonrenewal, and have a record of the meeting and deliberations of the Board do not hinge on whether the Board was exercising a quasi-judicial power, but whether Brown had a property interest in contract renewal secured either by statute or contract, invoking constitutional due process protections.

Having determined there is no requirement of good cause for nonrenewal, we also conclude procedural due process is not offended by giving Brown only those procedural protections mandated by the Act and not the additional protections to which she now insists, and the trial court found, she is entitled.

Constitutional procedural due process analysis is a two-step process in which the court first determines whether due process is even implicated, and, if it is, then determines what process is due. At the first level the claimant must establish some property or liberty interest such that the protections of the Due Process Clause are invoked. See *Curtis Ambulance v. Shawnee Cty. Bd. of Cty. Com'rs*, 811 F. 2d 1371 (10th Cir. 1987) (process requirements come into play only after plaintiff shows liberty or property interest); *Kansas Racing Management, Inc. v. Kansas Racing Comm'n*, 244 Kan. 343, 354, 770 P.2d 423 (1989) (claimant must show possession of definite liberty or property interest being abridged). This property or liberty interest is not inherent in the Due Process Clause but must be rooted in state law. See *Bishop v. Wood*, 426 U.S. 341, 344 n.7, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976).

Once a claimant has established a property or liberty interest is at stake, to make a valid claim of a violation of due process rights the claimant must then establish that he or she was denied some specific procedural protection to which he or she is entitled. The question of what procedural protections must accompany a particular property or liberty deprivation is resolved by a balancing test, weighing the individual loss at stake, the risk of erroneous deprivation, and the governmental interest in a more abbreviated proceeding. See *Crane v. Mitchell County U.S.D. No. 273*, 232 Kan. 51, 57, 652 P.2d 205 (1982).

The Act clearly gives Brown some rights prior to the nonrenewal of her contract which may create some minimal expectation of continued employment. The magnitude of this interest is slight, however, if the Act prescribes only procedural formalities to the nonrenewal of a tenured administrator's contract and not a substantive standard of good cause.

A school administrator's expectation of continued employment created by the Act consists of the right to automatic renewal of the

administrator's contract if the school board fails to meet the deadline for notifying the administrator of its intent not to renew the contract. See *Ottawa Education Ass'n v. U.S.D. No. 290*, 233 Kan. 865, 867-68, 666 P.2d 680 (1983). The purpose of such a provision is to permit the administrator time to secure other employment. See *U.S.D. No. 461 v. Dice*, 228 Kan. 40, 42, 612 P.2d 1203 (1980). This is similar to the property interest held by nontenured teachers in contract renewal and is insufficient to require a hearing or other protective process. See *Gragg v. U.S.D. No. 287*, 6 Kan. App. 2d 152, Syl. ¶ 6, 627 P.2d 335 (1981). The Act also creates a procedural right to a meeting with the school board in executive session, a statement of reasons for nonrenewal, and an opportunity for the administrator to respond. These state law procedural rights do not invoke the protections of the Due Process Clause. See *Atencio v. Bd. of Ed. of Penasco Ind. Sch. Dist.*, 658 F.2d 774, 779 (10th Cir. 1981).

Even if this were not the case, an administrator's expectation of continued employment extends no farther than an expectation that the school board will follow the procedures defined by the statute. An administrator's rights created by the statute are completely protected when the procedures mandated by the statute are followed. See *Meadows v. School District U-46*, 141 Ill. App. 3d 335, 490 N.E.2d 140 (1986). Thus, there is no additional interest entitled to protection through more extensive process under the Due Process Clause. This court has previously opined that whatever property rights may be created by the Act are adequately safeguarded when the school board follows the Act's procedural requirements. See *Kosik*, 250 Kan. at 515.

An examination of the Act clearly shows the Board is not obligated to present evidence for Brown's benefit, nor is it required to make Brown privy to its discussions once Brown's statements and allegations are presented. There is nothing in the statute which imposes on the Board the burden to present evidence and make a record of the proceedings. In addition, the Board is entitled to a presumption of regularity of its actions. See *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 384, 673 P.2d 1126 (1983).

For a tenured teacher, substantial evidence of cause for nonrenewal must be disclosed by virtue of the governing statutory scheme. *Haddock v. U.S.D. No. 462*, 233 Kan. 66, 69-70, 661 P.2d 368 (1983). The Administrators' Act has no textual basis for an analogous requirement. Moreover, having concluded that good cause is not required for nonrenewal, we cannot conceive that substantial evidence could be required. Brown has failed to show that any obligation exists on the Board to present reasons beyond those required by the statute. There were no procedural due process rights beyond those exercised that were violated in this case.

The final question to consider to fully respond to the arguments of the parties is whether Brown had some right under K.S.A. 72-9001 *et seq.*, (the act dealing with the evaluation of certified personnel) that was violated and precluded the nonrenewal of her contract. In part, K.S.A. 72-9003(d)(1) requires every board of education to adopt an evaluation procedure which shall

"[p]rovide that every employee in the first two consecutive years of employment shall be evaluated at least one time per semester by not later than the 60th school day of the semester . . . and that every employee during the third and fourth years of employment shall be evaluated at least one time each school year by not later than February 15."

It is undisputed that while Brown was properly evaluated each semester during the first 2 years of her employment and once per year thereafter, she was not evaluated during the year she received notice of the Board's intent not to renew. She argues that, as a result, the Board could not nonrenew her contract because of K.S.A. 72-9004(f), which provides:

"The contract of any person subject to evaluation shall not be nonrenewed on the basis of incompetence unless an evaluation of such person has been made prior to notice of nonrenewal of the contract and unless the evaluation is in substantial compliance with the board's policy of personnel evaluation procedure as filed with the state board in accordance with the provisions of K.S.A. 72-9003, and amendments thereof."

The Board contends the restriction in K.S.A. 72-9004(f) is not applicable here because incompetence was not the reason for the nonrenewal of Brown's contract. We find this argument convincing. None of the specific reasons given to Brown such as inconsis-

tent organizational and instructional leadership, "lack of support and trust among the staff," and failure to develop innovative and visionary leadership is consistent with saying she is unqualified, not capable, or not competent for the position.

Additionally, a similar argument was not found convincing in *Burk v. Unified School Dist. No. 329, Wabaunsee Cty.*, 646 F. Supp. 1557, 1563 (D. Kan. 1986), where Chief Judge O'Connor looked to the purpose of the Evaluation of Certificated Personnel Act, K.S.A. 72-9001 *et seq.*, in providing a method to improve school personnel as only being consistent with the employee remaining in the school district's employment.

We hold the failure to make the February 15, 1995, evaluation does not preclude the nonrenewal of Brown's contract.

*If good cause is not required to nonrenew the contract of an administrator and procedural due process rights are not invoked, is the meeting reviewing a decision to nonrenew an administrator's contract quasi-judicial?*

We have the obligation to consider if the district and appellate court's jurisdiction is lacking. See *Resolution Trust Corp. v. Bopp*, 251 Kan. 539, Syl. ¶ 2, 836 P.2d 1142 (1992). Consequently, we address the questions of whether the "meeting" that a nonrenewed principal is granted with the Board is quasi-judicial under K.S.A. 60-2101(d) and whether the decision in *Allen v. U.S.D. No. 436*, 19 Kan. App. 2d 873, 878 P.2d 223 (1994), should be disapproved.

K.S.A. 60-2101(d) confers jurisdiction to review the action of a political subdivision only where it is exercising "judicial or quasi-judicial functions." If the Board's action was not quasi-judicial in character, this court lacks jurisdiction under K.S.A. 60-2101(d). The right to an appeal is not a vested right, and in the absence of a statute authorizing an appeal, no appeal is available. *U.S.D. No. 503 v. McKinney*, 236 Kan. 224, 228, 689 P.2d 860 (1984).

The issue of whether a procedure is quasi-judicial became significant following the enactment of the new Code of Civil Procedure effective January 1, 1964, which specifically provided for appeals from administrative boards exercising quasi-judicial functions. K.S.A. 60-2101(a) (Corrick), now K.S.A. 60-2101(d).

Although our decision here is whether an administrative meeting between a Board of Education and a principal is quasi-judicial, the early rules were laid down for determining whether an administrative agency performs legislative or judicial functions. In *Gawith v. Gage's Plumbing & Heating Co., Inc.*, 206 Kan. 169, Syl. ¶¶ 2, 3, 476 P.2d 966 (1970), our workers compensation director was determined to act in a quasi-judicial manner because the director's office investigates, declares, and enforces liabilities as they stand on present or past facts with the responsibility of making decisions courts have historically been accustomed to perform.

In *Thompson v. Amis*, 208 Kan. 658, Syl. ¶ 6, 493 P.2d 1259, *cert. denied* 409 U.S. 847 (1972), we said the Civil Service Board was acting in a quasi-judicial capacity because it was "empowered to investigate facts, weigh evidence, draw conclusions as the basis for official actions, and exercise discretion of a judicial nature."

In describing the manner in which the Civil Service Board functioned, we said:

"The Board is empowered by statute to hear appeals of dismissed employees and determine the reasonableness of the dismissal (K.S.A. 75-2949 [2]), and after considering the evidence, it may order reinstatement of the employee and the payment of loss of salary. (K.S.A. 75-2949 [3] [4].) The Board has the authority to establish rules (75-2949 [5]); to conduct hearings; to administer oaths and take testimony; to issue subpoenas to compel attendance of witnesses; to take depositions, and to require the production of documents pertinent to any inquiry or investigation authorized by the Civil Service Act (75-2932 [1-4])." 208 Kan. at 663.

A clear example of an instance where a school board is not acting in a quasi-judicial manner is the decision of whether the closing of a school was authorized by law and whether such closing was desirable. *Linnens v. Board of Education of U.S.D. No. 408*, 3 Kan. App. 2d 662, 600 P.2d 152, *rev. denied* 227 Kan. 927 (1979). Chief Judge Foth said: "We are convinced that school closing requires a blending of legislative policy making and executive action to carry out the policies adopted. It is not a quasi-judicial function." 3 Kan. App. 2d at 665-66.

In *Schulze*, 221 Kan. 351, proceedings where a principal was issued a letter of reprimand after a complaint was filed, a public

hearing was held, the principal appeared with counsel, witnesses were called, evidence was weighed, and a decision was reached were held to be quasi-judicial, and a 60-2101(d) appeal was allowed. We believe there is a great difference between the factual background in *Schulze* and the meeting in executive session provided for in K.S.A. 72-5453(b).

In *Francis v. U.S.D. No. 457*, 19 Kan. App. 2d 476, 481, 871 P.2d 1297, *rev. denied* 255 Kan. 1001 (1994), our Court of Appeals held: "There is no doubt that, in conducting the due process hearing and terminating the plaintiff's employment agreement, the school board was acting in a quasi-judicial capacity and was exercising quasi-judicial powers." *Francis,* however, is again completely different factually from our case. It involved the termination of the employment of a grade school principal charged with shoplifting. The termination of an existing contract of employment was accomplished after she received a notice of intent to terminate and participated in a due process hearing. The case was resolved by the failure to file a timely appeal. We have previously stated herein that the legislature removed the termination of employment from the scope of the Administrators' Act and, thus, any holding relating to termination in *Francis* would not be persuasive to us here on the question of whether a nonrenewal decision is quasi-judicial in nature.

The Court of Appeals has also held that the decision to nonrenew an administrator's contract, like a decision to terminate a contract, was quasi-judicial. *Allen,* 19 Kan. App. 2d at 875-76. The *Allen* court reached this decision by reasoning that nonrenewal decisions are more judicial in character than they are legislative. We believe this reasoning is flawed in that it fails to consider that personnel decisions may be executive in nature rather than quasi-judicial, especially when they can be made without regard to any measurable standards, as in employment-at-will cases. The *Allen* court also relied on a tenuous analogy to *Kosik* which did not involve the Administrators' Act and in which jurisdiction was not raised by the parties or addressed by the court. 19 Kan. App. 2d at 876-77.

An administrative agency or political subdivision may exercise powers that partake of the character of the powers exercised by

any of the principal three branches of government. In overseeing and managing its internal operations, it may act in an executive or administrative capacity. See *Stephens v. Unified School District*, 218 Kan. 220, 232-33, 546 P.2d 197 (1975); *Peachtree Development Co. v. Paul*, 67 Ohio St. 2d 345, 350, 423 N.E.2d 1087 (1981). In looking to the future and changing existing conditions by making a new rule to be applied thereafter within some area of its power, the agency or political subdivision exercises a legislative function. Judicial functions performed by administrative agencies or political subdivisions are those with which a court might have been charged in the first instance or functions courts have historically performed or did perform prior to the creation of the administrative body. *Stephens*, 218 Kan. at 234. A function that is not a true judicial function may nevertheless be "quasi-judicial." Quasi-judicial functions are those which involve a discretionary act *of a judicial nature* taken by a body empowered to investigate facts, weigh evidence, and draw conclusions as a basis for official actions. *Schulze*, 221 Kan. at 354.

The test used to distinguish executive/administrative actions from quasi-judicial actions considers "whether the function in question involves the exercise of discretion and requires notice and a hearing. If any of these requirements is absent, the action is usually administrative rather than quasi-judicial." *Van Pelt v. St. Bd. Comm. Colleges*, 195 Colo. 316, 320, 577 P.2d 765 (1978). While the nonrenewal of an administrator employed for at least 2 consecutive years involves discretion and requires notice, it does not require a hearing, but only a "meeting." No evidence is taken, counsel are not present, the meeting is accomplished in executive session, a record is not required, and none of the normal trappings of a judicial inquiry are present.

If the nonrenewal of a employee's contract required a school board to meet certain measurable substantive standards (*i.e.*, good cause), the application and evaluation of such standards in a given case is a discretionary act of a judicial nature and thus a quasi-judicial function. However, if the board's decision about personnel staffing is not subject to substantive standards, it is not of a judicial nature, but an executive one. See *Gillan v. The Board of Regents*

*of Normal Schools,* 88 Wis. 7, 13, 58 N.W. 1042 (1894); 2 Am. Jur. 2d, Administrative Law §§ 469, 470. Thus, under the analogous Illinois case previously cited, it has been held: "No issue exists as to the validity of the reasons. The statutory language does not imply a right to contest the reasons but merely provides for their discussion." *Swanson,* 135 Ill. App. 3d at 476. Therefore, if the meeting reviewing a decision to nonrenew an administrator's contract is not of a judicial nature because it lacks substantive standards on which judicial-type decisions are based, it is not a quasi-judicial act, and there is no appellate jurisdiction under K.S.A. 60-2101(d). As the *Swanson* court held: "There are thus no questions or issues to be determined at the hearing, either private or public, and the Act provides that the decision of the board becomes final. Thus, the legislature does not contemplate any judicial review." *Swanson,* 135 Ill. App. 3d at 475.

We believe this result is again consistent with the legislature's choice to substitute a meeting for a hearing when amending the original bill. We would have no hesitation in holding that a discretionary decision after a hearing based on substantive standards is quasi-judicial in nature, but the specific wording of the Act provides for a "meeting" between an administrator and a school board where no substantive standards restrict the board's discretion, which is not quasi-judicial in nature.

Because of the results we have reached, we reverse the district court's decision that good cause was required, that procedural due process was violated, that the Board's proceedings were arbitrary, and that the nonrenewal of Brown's contract should be reversed. We remand to the district court with instructions to dismiss Brown's appeal for lack of jurisdiction under K.S.A. 60-2101(d) because the Board's proceedings under K.S.A. 72-5453 are not quasi-judicial. We specifically disapprove of the result reached and the Court of Appeals' opinion in *Allen v. U.S.D. No. 436,* 19 Kan. App. 2d 873, 878 P.2d 223 (1994).

Reversed and remanded to the district court with instructions to dismiss Brown's appeal.