**Ross TODD, Plaintiff,**

v.

**Brian HEEKIN, et al., Defendants.**

**No. C–1–81–837.**

United States District Court,
S. D. Ohio, W. D.

Aug. 20, 1982.

Steven M. Kramer, Philadelphia, Pa., Harvey A. Immerman, Cincinnati, Ohio, for plaintiff.

Jacob K. Stein, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter came before the Court for a hearing on cross-motions for summary judgment filed by plaintiff (doc. 23) and defendant (doc. 37) and plaintiff's memorandum in opposition to defendant's motion (doc. 39). After reading all of the pleadings and papers filed by the parties and for reasons described below, this Court concludes that both motions should be denied.

■ The narrow question which we must decide is whether there is "no genuine issue as to any material fact and [whether either of] the moving part[ies] is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. 10 Wright & Miller, *Federal Practice and Procedure: Civil,* § 2712 at 379 (1973). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir. 1979) (emphasis original). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.,* quoting Rule 56(c), Fed.R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

Plaintiff, Ross Todd, brought this action to enforce the terms of an anti-trust settlement agreement executed by the parties September 15, 1980. In the original action (C–1–79–717), Ross Todd & Associates, Inc. alleged that defendants Brian Heekin and Cincinnati Riverfront Coliseum had conspired with Electric Factory to restrain trade unreasonably in the promotion of concerts at the Coliseum.

The agreement provided, *inter alia*, that the Coliseum would make two cash payments to Ross Todd & Associates, the first to be paid when the agreement was concluded; the second, one year later. When defendant failed to make the second payment, plaintiff brought this action.

Defendant asserts that payment of the second installment was excused under the terms of the agreement because Steven Kramer, counsel for plaintiff, disclosed the non-monetary terms of the agreement to Allen Spivak, partner in Electric Factory. Defendants also filed a counterclaim, seeking a refund of the first payment which the Coliseum had made to Ross Todd & Associates.

Review of the pleadings and depositions filed by the parties demonstrates that the following facts are not in dispute. The 1980 anti-trust settlement agreement (filed as plaintiff's exhibit A with plaintiff's motion for summary judgment, doc. 23) provided for two cash payments by defendant Coliseum to Ross Todd & Associates as well as certain non-monetary relief. Paragraph 8 provided that in the event of breach by plaintiffs, the Coliseum would be entitled to a refund of any installments paid and relieved of the obligation to make future payments. In Paragraph 11 of the agreement, Mr. Todd and his attorney Mr. Kramer "agree[d] not to directly or indirectly disclose . . . the terms of this Agreement . . . to any person or entity whatsoever for any reason at any time."

The parties agree that Mr. Spivak acted on Mr. Heekin's behalf in the settlement negotiations and was instrumental in moving the parties toward agreement. Mr. Todd was represented in these negotiations by his attorney Mr. Kramer. After the negotiations were well under way, Mr. Spivak withdrew. Mr. Heekin and Mr. Kramer completed the negotiations which resulted in the settlement agreement now at issue.

In the late spring of 1981, Mr. Kramer revealed the non-monetary terms of the final agreement to Mr. Spivak in the course of agreeing with Mr. Spivak that Ross Todd & Associates and Electric Factory would co-promote a proposed Rolling Stones concert at the Coliseum. The parties agree that such a concert would have been beneficial to all concerned. Defendant concedes that Mr. Kramer's disclosure was not motivated by malice or bad faith.

It is also undisputed that the Coliseum has suffered no damages to date as a consequence of the breach. No suits are pending or threatened against the Coliseum as a result of Mr. Kramer's disclosure. Moreover, the parties agree that it is unlikely that Mr. Kramer will reveal the non-monetary terms to any other person as such disclosure is not in his best interest.

Although there is no dispute as to the above facts, the parties disagree as to whether Mr. Kramer's disclosure to Mr. Spivak was the type of disclosure prohibited by the confidentiality provision of Paragraph 11. Plaintiff asserts that as Mr. Heekin's agent in the negotiations, Mr. Spivak was aware that the final agreement contained provisions for non-monetary relief. Although admitting that Mr. Spivak was not aware of the details of those provisions, plaintiff contends that disclosure to an agent of one of the parties to the agreement was not prohibited by the non-disclosure clause.

Defendant argues that the language of the confidentiality clause absolutely prohibited disclosure. In this view, the disclosure constitutes a breach justifying the Coliseum's non-payment of the second installment to Ross Todd and the demand for a refund of the first installment.

This Court finds that this action raises four critical questions, none of which can be

186

answered on the basis of the papers filed by the parties. Further evidence is necessary to a just resolution.

First, we question the propriety of the agreement itself. The agreement was the product of an anti-trust suit and yet it has provisions, kept from the public, which may themselves violate anti-trust law. This Court will not enforce the agreement without more convincing evidence of its validity.

Second, assuming *arguendo* that the agreement is valid, it is not at all clear whether Mr. Kramer's disclosure amounts to a breach. Did the parties in fact intend the non-disclosure provision to bar disclosure of the agreement terms even to the person who in effect brokered that agreement?

Third, if Mr. Kramer's disclosure is found to be a breach of the agreement, the legal consequences depend upon whether the breach was material. Restatement 2d Contracts § 237. Materiality is a question of fact to be determined by looking at the circumstances of the particular case. Significant circumstances include the extent to which the injured party will be deprived of the expected benefit; the extent to which the injured party can be compensated for the benefit of which he is deprived; the extent to which the breaching party will suffer forfeiture; and the extent to which the breaching party's behavior comports with standards of good faith and fair dealing. Restatement 2d Contracts § 241.

The Court concludes that further evidence is necessary to establish the materiality of plaintiff's breach, if any. Such evidence can best be developed at trial.

Finally, even if the breach is determined to be material, the Court questions whether the forfeiture provision of the agreement contained in Paragraph 8 is so harsh as to be in the nature of a penalty. Additional competent evidence is required in order to reach an answer.

The Court finds that there are disputed issues of material fact. Plaintiff's motion for summary judgment is, therefore, de-

nied. Defendant's motion for summary judgment is also denied.

SO ORDERED.