Sandra LASSITER, Plaintiff,

v.

TOPEKA UNIFIED SCHOOL
DISTRICT NO. 501, et
al., Defendants.

No. 04–2213–JWL.

United States District Court,
D. Kansas.

Dec. 17, 2004.

Laronna L. Saunders, Olathe, KS, for Plaintiff.

N. Larry Bork, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This lawsuit arises from events culminating in plaintiff Sandra Lassiter's departure from the employment of defendant Topeka Unified School District No. 501. Plaintiff asserts civil rights and state law claims against the school district, the school board, and certain school district personnel in their individual capacities. This matter is presently before the court on the defendants' motion to dismiss (doc. 22), which the court construes as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure because it was filed after defendants filed their answer to plaintiff's complaint. For the reasons explained below, defendants' motion is granted without prejudice to plaintiff filing an amended complaint on or before January 3, 2005.

## FACTS [1]

█ Plaintiff was an employee of the school district for thirty-three years as a counselor, teacher, and administrator, and in all of those years she had never had any grievance or disciplinary actions taken against her until the events that gave rise to this lawsuit occurred. At that time, she was a principal at Quinton Heights Elementary School. In March of 2002, six teachers at Quinton Heights made false allegations against her to her supervisor, defendant Barbara Davis, who was the Director of Elementary Education for the school district. Ms. Davis did not tell plaintiff about those false allegations at that time, but instead waited and told plaintiff about the allegations around May 13, 2002. On May 14, 2002, plaintiff met with the then-superintendent of the school district, defendant Robert McFrazier, and informed him that the allegations were bogus. She asked Mr. McFrazier how to deal with the staff and the situation at the school. He did not give her any suggestions, limitations, or restrictions on what she could say to the staff regarding the allegations. Plaintiff requested that Mr. McFrazier have an impartial officer conduct an investigation and speak with the other twenty-four staff members at Quinton Heights regarding the allegations. Mr. McFrazier, however, did not have an investigation performed at that time.

Plaintiff had previously scheduled an end-of-year staff meeting for May 15, 2002. At that meeting, in addition to the regular agenda, plaintiff informed the staff that she had requested that an impartial officer come and speak with the staff regarding the concerns that had been raised. That same day, plaintiff was suspended [2] despite the fact that she had not been instructed not to discuss the matter with staff. On May 17, 2002, Mr. McFrazier asked plaintiff to return to the school the following Monday, May 20, 2002. He did not offer her any explanation regarding the suspension, the allegations, or the investigation.

An investigation into the allegations began on or about June 6, 2002. Plaintiff spoke with the investigator on or about June 17, 2002. At that time, the investigator informed her that the results of the investigation were favorable to her and would be submitted to Mr. McFrazier that same day. Approximately one week later, plaintiff asked the school district's attorney, Joe Zima, when the results of the investigation would be made available to clear her of the allegations. Mr. Zima informed plaintiff that results are usually disclosed immediately and that he would find out why the results had not yet been given to her.

More than a month later, on July 25, 2002, Mr. McFrazier scheduled a meeting with plaintiff to inform her of the results of the investigation. Plaintiff was apprehensive about the way Mr. McFrazier had appeared to be handling the investigation and also about the amount of time that he had let pass before informing plaintiff about the results of the investigation. Consequently, plaintiff brought two persons to be witnesses at the meeting. When they arrived at the meeting, Mr.

---

1. In the parties' briefs and memoranda they provide much more elaborate detail regarding the facts that gave rise to this lawsuit. Consistent with the well established standards for analyzing a motion for judgment on the pleadings, however, the court will look no further than the allegations in plaintiff's complaint, which the court accepts as true.

2. Paragraph 18 of plaintiff's complaint alleges that "disciplinary action" was taken against her, but it does not specify what type of disciplinary action was taken. Paragraph 19 then states that Mr. McFrazier did not offer her any further explanation regarding the suspension. Thus, it appears that the disciplinary action was a suspension.

McFrazier was upset with the presence of these third-party witnesses. Although he had never told plaintiff that she could not bring witnesses to the meeting, he cited her with insubordination and wrote her a remand letter.

On July 31, 2002, plaintiff attended the rescheduled meeting with Mr. McFrazier and Ms. Davis. At that meeting, Mr. McFrazier informed plaintiff that she would be on probationary status for the 2002–2003 school year because of an evaluation performed by Ms. Davis. That evaluation was based on the false allegations despite the fact that those allegations had been cleared by the investigation.

During the first semester of the 2002–2003 school year, plaintiff experienced harassment and a series of trumped up charges and attacks against her by Mr. McFrazier and Ms. Davis. Those complaints ranged from making it difficult to hire paraprofessionals to criticizing plaintiff's school plan and curriculum, which is the same plan the school district now utilizes. On or about December 4, 2002, Mr. McFrazier gave plaintiff a document consisting of questions relating to the same false allegations, despite the results of the investigation dismissing those claims. Mr. McFrazier instructed plaintiff to respond to the questions within five days. Plaintiff retained counsel to assist in responding to the questions.

On January 3, 2003, Mr. McFrazier suspended plaintiff and informed her that he was going to request that she be terminated because he did not agree with her responses to the questions. At that point, plaintiff and her attorney requested a due process hearing. On January 10, 2004, a meeting took place with the president of the school board, plaintiff, Mr. McFrazier, Ms. Davis, and the parties' attorneys. On January 15, 2003, plaintiff's attorney sent a letter stating that plaintiff intended to pursue a due process hearing before the entire school board. The hearing before the school board was set for February 7, 2003. Before that date, plaintiff and her attorney learned that the school board was intending to terminate plaintiff at the behest of Mr. McFrazier and Ms. Davis.

On February 7, 2003, plaintiff entered into a resolution of personnel matter with Mr. McFrazier as superintendent of the school district.[3] By virtue of the resolution, Mr. McFrazier withdrew his recommendation that plaintiff be terminated, plaintiff withdrew her request for a due process hearing, plaintiff was re-assigned to an administrative position within the school district for the remainder of the school year, and it was agreed that she would be considered for employment within the district the following school year which would be determined based on her compliance with her probation terms, successfully completing the school year, and the normal evaluation process. The resolution also included a confidentiality clause and a waiver and release of liability from the events surrounding plaintiff's evaluation in June of 2002, the fact that she was placed on probation on or about July 31, 2002, and Mr. McFrazier's January 3, 2003, recommendation that she be terminated. Plaintiff alleges that Mr. McFrazier and Ms. Davis breached the confidentiality provision of the resolution by sharing confidential information with members of the public.

Plaintiff completed the 2002–2003 school year with a satisfactory evaluation. On April 30, 2003, she met with Mr. McFrazier concerning the completion of her probationary status. He informed her that her probationary status was complete and that

---

**3.** The relevant terms of the resolution are set forth in more detail below.

he would "take care of it later." At the end of June, Mr. McFrazier retired without having cleared plaintiff's probationary status.

On July 1, 2003, defendant Tony Sawyer took office as superintendent of the school district. Plaintiff met with him on or about August 1, 2003, explained the circumstances surrounding her probation, and asked him to clear her probationary status. Mr. Sawyer responded that he did not want to touch the situation and refused to do anything about her probationary status. Plaintiff expressed concern to Mr. Sawyer that she was in a position "created" by Mr. McFrazier and that it was a position for which she was qualified, but not certified. In fact, on plaintiff's evaluation the school administration had stated that it was concerned with this created position. Plaintiff told Mr. Sawyer that she was concerned that she might be vulnerable to the same type of attacks that she experienced the previous school year if she remained in an uncertified position. She further explained to Mr. Sawyer that Mr. McFrazier had been aware of this dilemma, but his attitude had been that plaintiff could either retire or stay in this susceptible position. Mr. Sawyer agreed that plaintiff's options were to either stay in that vulnerable position or retire, but he refused to clear her probationary status. Plaintiff appealed to the school board numerous times, but the school board refused to provide any recourse or clear the probationary status. Plaintiff alleges that because defendants kept her in an uncertified position on probationary status she could easily have been terminated, which would have impacted her retirement benefits. Thus, she was forced to retire.

Based on these allegations, plaintiff brings this lawsuit against the school district, the school board, and Mr. McFrazier, Ms. Davis, and Mr. Sawyer in their individual capacities. Plaintiff asserts seven separate claims, entitled: (1) violation of 42 U.S.C. § 1983; (2) violation of plaintiff's Fourteenth Amendments due process rights; (3) violation of 42 U.S.C. § 1981; (4) breach of contract; (5) negligence under the Kansas Tort Claims Act (KTCA), K.S.A. § 75–6103; (6) malice or reckless indifference; and (7) forced retirement. Defendants contend that plaintiff waived her claims against them by virtue of the waiver and release provision contained in the resolution and defendants also raise a litany of arguments why plaintiff's complaint fails to state a claim upon which relief can be granted under any of these theories.[4]

## STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

■■■ A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6). *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir.2000). The court will dismiss a cause of action for failure to state a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338

---

**4.** Defendants also argue that the individual defendants are entitled to qualified immunity. In light of the fact that the court agrees with defendants that plaintiff's complaint fails to state a claim upon which relief can be grant-

ed, the court declines to address defendants' qualified immunity arguments at this time. Nonetheless, plaintiff would be well advised to evaluate these qualified immunity issues in preparing her amended complaint.

(1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quotation omitted).

■■■ It is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss. *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir.2001). If the court on a Rule 12(b)(6) motion looks to matters outside the complaint the court generally must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *Id.* However, it is "accepted practice that, 'if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claims, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.'" *Id.* (quoting *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir.1997)). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* (quoting *GFF Corp.*, 130 F.3d at 1385).[5]

## DISCUSSION

As explained below, the court finds that the allegations in plaintiff's complaint are sufficient to withstand dismissal as a matter of law on the grounds of the waiver and release provision contained in the resolution. Plaintiff alleges a breach of the confidentiality provision, and that breach is arguably sufficiently material that plaintiff's performance under the waiver and release provision may be deemed excused. Nonetheless, plaintiff's complaint fails to state a claim upon which relief can be granted under § 1983 because it fails to allege a property interest or liberty interest sufficient to invoke procedural due process protections and it fails to allege facts from which a violation of her substantive due process rights can be inferred. Her complaint also fails to state a claim under § 1981 because it fails to allege that she was subjected to any racial or ethnic discrimination. Having dismissed plaintiff's federal law claims, the court declines to exercise supplemental jurisdiction over her state law claims at this time. The court will, however, grant plaintiff leave to amend her complaint.

### A. Enforceability of Waiver and Release Provision of Resolution

As a threshold matter, defendants argue that the court should enforce the waiver and release provision in the resolution. That provision states as follows:

> Sandra Lassiter waives any and all further rights she has regarding her evaluation on or about June 6, 2002, being placed on probation on or about July 31, 2002 and being recommended for termination on or about January 3, 2003. She releases Dr. Robert McFrazier and the Board of Education of USD 501, its officers, administrators and employees from any and all rights, claims, demands or causes of action which she may have

---

**5.** Defendants submitted an indisputably authentic copy of the resolution agreement as an exhibit to their motion. Because plaintiff refers to this resolution in her complaint and it is central to her claims, the court will consider it in resolving defendants' motion.

against them regarding her recommendation for termination on January 3, 2003 and any actions leading up to that recommendation or related events thereafter. This document can be used as a defense to any such claim, demand or action brought by Sandra Lassiter regarding same.

Resolution of Personnel Matter Involving Sandra Lassiter, ¶ 11, at 2. In response, plaintiff argues that this provision is unenforceable because defendants committed a material breach of the agreement. She argues that defendants breached the provision of the resolution which states that "the terms of this settlement will be confidential," *id.* ¶ 5, at 1, by sharing confidential information with members of the public. Plaintiff argues that this breach was material because another provision of the resolution states that "[e]ach and every element of this agreement is a material part of the agreement and a breach of any such element is a breach of the entire agreement." *Id.* ¶ 12, at 2.

A party's uncured material breach of a contract can suspend or discharge the other party's obligation to perform. *See* E. Allan Farnsworth, Contracts § 8.16, at 638–40 (2d ed.1990); *see, e.g., Elec. Distribs., Inc. v. SFR, Inc.,* 166 F.3d 1074, 1086 (10th Cir.1999) (noting that a material breach excuses the other party's performance under Colorado law). The Restatement (Second) of Contracts § 237 (1981) provides that "it is a condition of each party's remaining duties to render performances … that there be no uncured material failure by the other party to render any such performance due at an earlier time." According to the Restatement, this doctrine is

> based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he [or she] will not be called upon to perform his [or her] remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party.

Restatement § 237 cmt. b. Whether a breach rises to the level of being considered a material breach is a question of fact. *See Elec. Distribs., Inc.,* 166 F.3d at 1086; Farnsworth, *supra,* § 8.16, at 638. Circumstances that may be significant in making this determination include: the extent to which the injured party will be deprived of the benefit of the parties' bargain; the extent to which the injured party can be adequately compensated for that deprivation; the extent to which the party failing to perform will suffer forfeiture; the likelihood that the party failing to perform will cure the failure; and the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing. Restatement § 241; *see also* Restatement § 242 (explaining the factors that are relevant to determining whether a party's uncured material breach discharges the other party's remaining duties to render performance).

Given the nature of the fact-specific inquiry regarding whether a breach is material, the court cannot say that it appears beyond a doubt that plaintiff can prove no set of facts that would entitle her to avoid performance on the grounds that defendants breached the confidentiality provision. Plaintiff alleges that defendants "breached the confidentiality clause by sharing confidential information with members of the public," Civil Compl. (doc. 1) ¶ 37, at 7, and that the breach was material. Another case involving facts similar to those alleged by plaintiff in this case is *Thomas v. Department of Housing & Urban Development,* 124 F.3d 1439

(Fed.Cir.1997). In *Thomas*, the plaintiff had been employed by the Department of Housing and Urban Development. He was demoted based on charges of mismanagement and abuse of supervisory authority. He appealed the demotion and ultimately entered into a settlement agreement with HUD under which he resigned and HUD agreed that it would keep the circumstances surrounding his departure confidential. Later, personnel at HUD breached the confidentiality provision by disclosing to a potential future employer the fact that plaintiff had been the subject of an investigation that had been used as a justification for his demotion. The Federal Circuit found that HUD's breach of the confidentiality provision was material because it was "a matter of vital importance and goes to the essence of this contract." *Id.* at 1442. The court reasoned that "[t]he agency's agreement to deny to potential future employers ... the truth about Thomas's performance at HUD was the major benefit that Thomas received in exchange for agreeing to resign from his position." *Id.* Likewise, here, the court can envision that the confidentiality provision may have been material in the sense that it was one of the major benefits that plaintiff anticipated receiving by virtue of entering into the resolution. The manner in which she alleges that she sought to defend the allegations against her—for example, by de-

manding an investigation by an impartial officer and by demanding a due process hearing before the school board—certainly suggests that she was keenly concerned about the possibility that her reputation would be impugned by the events that transpired. Thus, the court cannot say that her complaint fails to state a claim solely by virtue of the waiver and release provision in the resolution because defendants' alleged breach of the confidentiality provision was arguably sufficiently material to excuse plaintiff's obligation to perform under the contract. *See also, e.g.,* *Todd v. Heekin,* 95 F.R.D. 184, 186 (S.D.Ohio 1982) (denying a motion for summary judgment because there were disputed issues of material fact concerning whether a breach of a confidentiality provision was material).[6]

▬▬▬ Defendants' argument based on the affirmative defense of equitable estoppel is without merit at this procedural juncture. An affirmative defense may be raised in such a motion only "[i]f the defense appears plainly on the face of the complaint itself." *Miller v. Shell Oil Co.,* 345 F.2d 891, 893 (10th Cir.1965); *accord* *New Jersey & its Div. of Inv. v. Sprint Corp.,* 314 F.Supp.2d 1119, 1142 n. 21 (D.Kan.2004); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 708–10 (3d ed.2004) (affirmative defense must appear

---

**6.** Plaintiff also argues that defendants breached paragraph 8 of the resolution which states that she "will be considered for employment with USD 501 for next year .... That determination will be based on complying with the terms of probation, having a successful completion of the school year and the normal evaluation process." Plaintiff contends that the defendants' failure to clear up her probationary status constituted a breach of this provision. The court declines to address the issue of whether defendants' alleged breach of paragraph 8 may have been material given the court's holding that the alleged breach of

the confidentiality provision is sufficiently material to withstand dismissal of plaintiff's claims on this basis. The court does wish to comment, however, that it is not necessarily persuaded that plaintiff's complaint adequately alleges a breach of paragraph 8 of the resolution insofar as plaintiff alleges that defendants failed to clear up her probationary status whereas paragraph 8 does not, by its plain terms, necessarily require defendants to clear up her probationary status. Thus, plaintiff may wish to amend her complaint to clarify the alleged basis for the breach of paragraph 8 of the resolution.

clearly on the face of the pleading in order for the complaint to be subject to dismissal under Rule 12(b)(6)). In this case, the allegations in plaintiff's complaint in no way suggest that the affirmative defense of equitable estoppel is available to defendants.

Accordingly, the court finds defendants' argument based on the waiver and release provision in the resolution to be without merit at this procedural juncture and defendants' motion for the court to dismiss plaintiffs' claims on that basis is denied.

**B. Section 1983 Claim**

■ In order to prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege "that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir.2004). "Section 1983 itself does not create any substantive rights, but merely provides relief against those who, acting under color of law, violate federal rights created elsewhere." *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1536 (10th Cir.1995). Plaintiff's complaint sets forth separate and distinct claims under § 1983, the Fourteenth Amendment, and for forced retirement Standing alone, plaintiff's § 1983 claim would fail. *Id.* (holding the plaintiff's failure to identify an independently created right upon which her § 1983 claim rested was fatal to her claim). When combined, however, her Fourteenth Amendment and forced retirement (i.e., constructive discharge) claims arguably satisfy the "federal right" aspect of her § 1983 claim. Accordingly, the court construes her § 1983 claim to be based on Fourteenth Amendment and forced retirement theories. Additionally, in plaintiff's response to defendants' motion she further expounds on the nature of her Fourteenth Amendment claim, explaining that it is a procedural and substantive due process claim. Given her arguments on this matter, the court construes her § 1983 Fourteenth Amendment claim to encompass alleged deprivations of procedural due process with respect to her property interest in continued employment and her liberty interest in her good name and reputation, as well as an alleged deprivation of substantive due process.[7] Having defined what the court understands to be the various contours of plaintiffs' § 1983 claim, then, the court will proceed to evaluate the various aspects of that claim.

**1. Procedural Due Process**

■ To state a claim for a procedural due process violation, a plaintiff must allege that the state denied him or her a definite liberty or property interest without affording fair procedures. *Southern Disposal, Inc. v. Texas Waste Mgmt., Inc.*, 161 F.3d 1259, 1265 (10th Cir.1998). In this case, plaintiff alleges a deprivation of her property interest in employment with the school district and her liberty interest in her good name and reputation.

**a. Property Interest**

■ Defendants raise a variety of arguments why plaintiff's complaint fails to state a procedural due process claim.

7. Despite the fact that plaintiff failed to specify her due process theories in her complaint, the court is construing this claim liberally at this time to encompass these various components because the court finds that the claim is subject to dismissal in any event. Nonetheless, the court cautions plaintiff that in filing her amended complaint she should be mindful that she "has the burden to identify the rights that [she] alleges the defendants violated." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 527 (10th Cir.1998). The defendants are not required to guess the nature of her due process claim. *Id.*

They argue, for example: that she waived her due process rights by withdrawing her request for a due process hearing; that she was never deprived of her property interest because she voluntarily resigned; that she did not suffer adverse employment action; and that she was afforded due process. All of these arguments essentially go to the second inquiry in the court's evaluation of whether plaintiff was denied procedural due process. The court must first ask whether plaintiff possessed a protected interest that invokes due process protections, and, if so, then secondly whether she was afforded an appropriate level of process. *See Montgomery,* 365 F.3d at 936. Thus, before the court can evaluate whether plaintiff was afforded a fair degree of process, the court must first ascertain the nature of her constitutionally protected property interest in her employment with the school district, if any.

 A constitutionally protected property interest is a "legitimate claim of entitlement" to some benefit. *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A property interest is more than an abstract need or desire or a unilateral expectation. *Id.* It is "an individual entitlement grounded in state law, which cannot be removed except for cause." *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). Property interests are not created by the federal constitution, but rather are created and defined "by existing rules or understandings that stem from an independent source such as state law." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701; *see also Hyde Park Co. v. Santa Fe City Council,* 226 F.3d 1207, 1210 (10th Cir. 2000) ("Due Process is not an end in itself."). "Thus, constitutionally protected

property interests are created and defined by statute, ordinance, contract, implied contract and rules and understandings developed by state officials." *Hulen v. Yates,* 322 F.3d 1229, 1240 (10th Cir.2003).

 In this case, plaintiff has not alleged any rule or express or implied contract from which her claimed property interest arises. Therefore, the court must look at Kansas law to determine the extent of her alleged property interest under state law. In this regard, it is significant that plaintiff's complaint alleges that at all relevant times she was a school principal or administrator; there is no allegation from which it can be inferred that she was acting as a school teacher at any time pertinent to the allegations in her complaint. The distinction is significant because Kansas law protects tenured teachers from termination or nonrenewal of their teaching contracts absent good cause, which includes the right to a meaningful due process hearing. *See generally* K.S.A. §§ 72–5436 to 75–5447 (2002 & Supp.2003) (outlining the due process procedures available to teachers); *Kansas State Bd. of Educ. v. Marsh,* 274 Kan. 245, 255, 50 P.3d 9, 16 (2002) (upholding a due process hearing committee's decision that the Kansas State Board of Education lacked good cause to terminate the employment of a tenured teacher). By comparison, the protection afforded to school administrators [8] is outlined in the Kansas Administrators' Act (KAA), K.S.A. §§ 72–5451 to 72–5455.

In *Brown v. Board of Education, Unified School District No. 333,* 261 Kan. 134, 928 P.2d 57 (1996), the Kansas Supreme Court addressed the issue of rights created under the KAA. The court noted the general employment-at-will rule in Kansas

---

8. The definition of administrator in the KAA is stated in K.S.A. § 72–5451(b), and includes school principals by virtue of its inclusion of persons designated in K.S.A. § 72–8202b. *See* K.S.A. § 72–8202b (listing principals).

that "absent a contract between the employer and employee providing otherwise, an employee has no right to continued employment, and either party may terminate the employment relationship without cause." *Id.* at 141, 928 P.2d at 64. The court compared the provisions of the KAA with the statutory scheme governing the termination or nonrenewal of tenured teachers' contracts and explained that whereas the KAA merely gives administrators the right to be notified of a nonrenewal and the right to an executive session "meeting" with the board of education, "the legislature has granted teachers much more comprehensive procedural protection from discharge consistent with an expectation of continued employment" such as advance written notice of the reasons for nonrenewal, a hearing before an impartial hearing officer, the right to legal counsel, the right to present witnesses, the right to cross-examination, the right to present testimony, the obligation for substantial evidence to support the decision in the hearing, and a burden of proof imposed upon the school board. *Id.* at 142–44, 928 P.2d at 64–65. Based on the absence of similar procedural protections for administrators, the court held that "an administrator ... can be nonrenewed without a showing of good cause." *Id.* at 148, 928 P.2d at 67. The court noted that the KAA affords administrators two procedural rights: (1) "the right to automatic renewal of the administrator's contract if the school board fails to meet the deadline for notifying the administrator of its intent not to renew the contract," which allows the administrator time to secure other employment; and (2) the "procedural right to a meeting with the school board in executive session, a statement of reasons for nonrenewal, and an opportunity for the administrator to respond." *Id.* at 150–51, 928 P.2d at 69. The court stated that "[t]hese state law procedural rights do not invoke the protec-

tions of the Due Process Clause." *Id.* at 151, 928 P.2d at 69.

In so holding, the Kansas Supreme Court relied upon the reasoning of, and hence implicitly approved, the district court's ruling in *Pierce v. Engle,* 726 F.Supp. 1231 (D.Kan.1989). One of the plaintiffs in *Pierce* was a former school principal who asserted a § 1983 due process claim against the school district for nonrenewal of his contract. On the school district's motion to dismiss, the court expressly rejected the plaintiff's argument that the KAA gives principals any property interest in continued employment. The court explained that "[t]he minimal procedural requirements set out in the Administrators' Act stand in sharp contrast to the detailed requirements contained in the earlier enacted Teachers' Due Process Act, K.S.A. 72–5436, et seq." *Id.* at 1236–37. Further, the legislature must have been aware of the Kansas Supreme Court's holding in *Gillett v. Unified School Dist. No. 276,* 227 Kan. 71, 605 P.2d 105 (1980) (interpreting the teachers' statutes to contain an implicit requirement that a tenured teacher can be terminated or nonrenewed only for good cause), when it enacted the KAA, and yet it failed to prescribe a similar statutory scheme for school administrators. *Pierce,* 726 F.Supp. at 1237. Thus, the district court held that the plaintiff could not base his property interest claim on the KAA. *Id.*

■ Likewise, plaintiff has no property interest in her continued employment with the school district pursuant to the KAA. Her complaint alleges that she was a principal at Quinton Heights and was reassigned to another administrative position within the school district. Her complaint does not allege that she was a tenured teacher who would have been entitled to the due process procedure set forth in K.S.A. §§ 72–5436 to 75–5447. *See* K.S.A.

§ 72–5436 ("The term 'teacher' does not include ... principals ...."). Thus, plaintiff's employment with the school district falls within the purview of the KAA, which has been interpreted to contain no limitation allowing administrators to be terminated or nonrenewed only for cause. The "standard for the existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). The school district was not constrained to discharge plaintiff only for cause, and therefore she was terminable at will and had no legitimate claim of entitlement to continued employment with the school district. Because she has failed to allege any facts from which it can be inferred that she has a constitutionally protected property interest in her employment with the school district, then, the school district was not required to afford her any level of due process. Accordingly, defendants' motion to dismiss is granted with respect to plaintiff's procedural due process claim insofar as that claim is based on an alleged property interest in her employment with the school district.

### 2. Liberty Interest

▇▇▇▇ "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him [or her], a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his [or her] name." *Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir.) (quotations and citations omitted), *cert. de-*

*nied,* ––– U.S. –––, 125 S.Ct. 181, 160 L.Ed.2d 100 (2004). Damage to reputation alone is insufficient to support a claim for a due process deprivation of liberty interest in one's reputation. *Paul v. Davis*, 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Rather, the loss of reputation must be coupled with some other tangible element, such as employment, in order to rise to the level of a protected liberty interest. *Id.* at 701, 96 S.Ct. 1155. To state a claim for deprivation of plaintiff's liberty interest in her good name and reputation as it affects her interest in continued employment with the school district, plaintiff must allege that: (1) defamatory statements impugned her good name, reputation, honor, or integrity; (2) the defamatory statements were false; (3) the defamatory statements occurred in the course of terminating plaintiff and/or [9] foreclosed other employment opportunities; and (4) the defamatory statements were published. *Sandoval v. Boulder Reg'l Communications Ctr.*, 388 F.3d 1312, 1329 (10th Cir.2004).

▇▇▇▇ In this case, defendants correctly point out that this theory was not sufficiently raised in plaintiff's complaint. Admittedly, plaintiff alleges that defendants McFrazier and Davis disclosed confidential information, but the nature of those confidential disclosures is unclear and consequently it is likewise unclear whether those disclosures were defamatory or how those disclosures were disseminated. In her response to defendants' motion, she argues that she was accused of a number of indiscretions—hence, presumably the allegedly defamatory statements. But ac-

---

**9.** The use of the word "or" here stems from *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir.1994). Since *Workman*, however, subsequent authority from the Tenth Circuit suggests that the correct terminology here is "and." *See Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 728 n. 1 (10th Cir.

2000). The court declines at this time to delve into the thorny issue of whether "and" or "or" is the proper terminology because the court finds that plaintiff's complaint fails to give defendants' adequate notice of the nature of her liberty interest claims against them in any event.

cording to the allegations in plaintiff's complaint, those accusations were made by other staff members at Quinton Heights, not defendants. Given plaintiff's failure to identify any defamatory statements made by defendants, then, the court cannot proceed to evaluate the parties' arguments with respect to whether plaintiff adequately alleged the other elements such as whether defendants published the allegedly defamatory statements or whether those allegedly defamatory statements were made in the course of terminating plaintiff's employment and/or foreclosed other employment opportunities. While the court is mindful that plaintiff need not precisely state each element of this claim, she must plead minimal factual allegations on the material elements that must be proven. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991). Here, plaintiff's complaint fails to give defendants or the court fair notice of the factual basis for her liberty interest claim. Accordingly, the court finds that plaintiff's complaint fails to state a claim for a liberty interest deprivation and therefore defendants' motion to dismiss is granted with respect to this aspect of her § 1983 claim.

### 3. Substantive Due Process

 Plaintiff argues that her deprivation of substantive due process theory is that her good name, reputation, honor and integrity were stigmatized by defendants' actions of making false allegations and statements to the public regarding her suspension, placing her on probation, and ultimately leaving her on probation without ever clearing her name. The Tenth Circuit has set forth the legal standards for stating a substantive due process claim:

the standard for judging a substantive due process claim is whether the challenged government action would "shock the conscience of federal judges." To satisfy this standard, a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power. Instead, a plaintiff must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking.

*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir.1998) (internal quotations and citations omitted).

 Under this standard, the court has no difficulty concluding that plaintiff's complaint fails to state a claim under a substantive due process theory. Liberally construing all factual allegations in plaintiff's favor, as the court must at this procedural juncture, defendants' alleged conduct was simply not outrageous. The defendants are comprised of a group of school administrators who were forced to cope with accusations of impropriety lodged against plaintiff by other school district personnel. Even if those accusations were unfounded, and even if defendants resolved the situation in an ill-advised, inappropriate, ill-considered, or flatly incorrect manner, their conduct does not rise to the level of shocking the conscience of federal judges. The allegations in plaintiff's complaint paint a portrait of an unfortunate but nonetheless relatively garden-variety employment dispute. "The Due Process Clause is not a guarantee against incorrect or ill-advised personnel decisions." *Collins v. City of Harker Heights, Tex*, 503 U.S. 115, 129, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992) (internal quotation and citation omitted). Thus, plaintiff's substantive due process claim fails to state a claim insofar as it is based on the manner in which defendants handled the staff's allegedly false accusations against plaintiff. *See, e.g., Tonkovich*, 159 F.3d at 530 (holding the district court committed reversible error by not dismissing substantive process

claim against a supervisor who gave the plaintiff an unearned negative annual evaluation because the plaintiff had been embroiled in a scandal at the time; same with respect to substantive due process claim against board and committee that made allegedly erroneous findings that plaintiff had engaged in unethical conduct).

### 4. Forced Retirement, i.e., Constructive Discharge Claim

 "[A]n employee's constructive discharge from a position in which the employee has a protectable property interest may be actionable under 42 U.S.C. § 1983." *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351, 1355 (10th Cir.1997). In evaluating whether a plaintiff has a viable § 1983 constructive discharge claim the court asks, first, whether the plaintiff was deprived of a protected property interest. *Id.* In this case, because the court has already concluded that plaintiff has failed to allege a constitutionally protected property interest in her continued employment with the school district, her complaint fails to state a § 1983 constructive discharge claim. *See, e.g., Lighton v. Univ. of Utah*, 209 F.3d 1213, 1221–22 (10th Cir.2000) (non-tenured professor could not maintain § 1983 constructive termination claim because he did not show a property right in his continued employment with the university).

### C. Section 1981 Claim

 Title 42 U.S.C. § 1981 "prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Reynolds v.*

*Sch. Dist. No. 1,* 69 F.3d 1523, 1532 (10th Cir.1995). "The purpose of § 1981 is to prevent discrimination against an individual on the basis of his or her race or ethnic background." *Olguin v. Lucero,* 87 F.3d 401, 404–05 (10th Cir.1996). Thus, to state a claim under § 1981, a plaintiff must allege that defendants "intentionally or purposefully discriminated against her," *Reynolds,* 69 F.3d at 1532, on the basis of her race or ethnicity.

 In this case, plaintiff does not allege any direct or circumstantial evidence that would give rise to an inference that she was subject to racial or ethnic discrimination. In fact, she does not even allege that she belongs to a minority group. Even under the liberal standards governing a motion to dismiss for failure to state a claim, these allegations fail to state a § 1981 claim. *See, e.g., Olguin,* 87 F.3d at 404–05 (complaint that failed to mention, implicitly or explicitly, that plaintiffs were discriminated against because of their race or ethnic background was insufficient under § 1981); *Brooks v. Couchman,* No. 04–2209–KHV, 2004 WL 2607551, at *5 (D.Kan. Nov.16, 2004) (dismissing § 1981 claim for failure to state a claim where the plaintiff did not allege discrimination on account of racial animus); *Hill v. McHenry,* No. 99–2026–CM, 2001 WL 238141, at *7 (D.Kan. Feb.20, 2001) (same, where nowhere in plaintiff's claim did he mention that he was discriminated against on the basis of his race). Accordingly, defendant's motion is granted with respect to plaintiffs' § 1981 claim.[10]

### D. Plaintiff's Remaining Claims and Arguments

Given the court's dismissal of plaintiff's federal law claims, the court declines to

---

**10.** To the extent that plaintiff's forced retirement claim might be predicated on § 1981, plaintiff's complaint would fail to state a claim for this same reason, which is that

plaintiff has not alleged any facts from which it can be inferred that she was subjected to discrimination on the basis of her race or ethnicity.

resolve the parties' remaining arguments including, for example, the viability of plaintiff's claim for punitive damages on her § 1981 and § 1983 claims and the individual defendants' claims of qualified immunity. Further, given the court's dismissal of plaintiff's federal claims, at this time the court declines to exercise supplemental jurisdiction over plaintiff's pendent state claims. *See* 28 U.S.C. § 1367(c)(3) (providing that the district court may decline to exercise supplemental jurisdiction over a plaintiff's pendent state claims where the court has dismissed all claims over which it had original jurisdiction); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir.1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

### E. Leave to Amend

■ Lastly, plaintiff requests leave to amend her complaint if the court determines that her complaint fails to state a claim or if her claims or facts are not specific enough. "Ideally, if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir.1994) (quotation and citations omitted). In this case, in the parties' briefs and memoranda, they have discussed numerous facts that were not alleged in plaintiff's complaint. Those facts reveal that plaintiff may very well be capable of amending her complaint to state a § 1981 and/or § 1983 claim against at least some of the defendants. The court certainly understands defendants' objections to allowing plaintiff to amend her complaint at this late date after she has had the benefit of having the weaknesses in her case exposed. Nonetheless, these considerations are largely attributable to the manner in which defendants elected to handle the sufficiency of the allegations in plaintiff's complaint. Defendants could have challenged the sufficiency of her complaint by way of a Rule 12(b)(6) motion to dismiss way back in June or July, but instead they waited until October to file their motion for judgment on the pleadings. This consideration, combined with the fact that plaintiff ought to be afforded an opportunity to test her claim on the merits if the underlying facts and circumstances may be a proper subject of relief, *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), leads the court to conclude that plaintiff should be given an opportunity to amend her complaint. Thus, the court will grant defendants' motion to dismiss without prejudice to plaintiff filing an amended complaint on or before January 3, 2005.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion to dismiss (doc. 22) is granted without prejudice to plaintiff filing an amended complaint on or before January 3, 2005.